## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## LONDON DIVISION

**NO. 6:06-CV-548 DCR**

**WILLIAM HARRIS ASHER, et al.,**

                            **Plaintiffs,**

**v.**

**UNARCO MATERIAL HANDLING, INC.**
**and ATLAS MATERIAL HANDLING, INC.,**

                            **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**ATLAS MATERIAL HANDLING, INC.,**

                            **Third-Party Plaintiff,**

**v.**

**RCI RACK CONVEYOR INSTALLATION, INC.**

                            **Third-Party Defendant.**

_____/

### AMENDED COMPLAINT

Plaintiffs sue Defendants Unarco Material Handling, Inc. and Atlas Material Handling, Inc., and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    This is an action for damages in excess of the jurisdictional minimum of this Court.

2.    Plaintiff William Harris Asher is, and was at times material herein, a resident of Rockholds, Kentucky, and over the age of majority.

3.    Plaintiff Joshua Mills is, and was at times material herein, a resident of Flatlick, Kentucky, and over the age of majority.

4.    Plaintiff Randall Sizemore is, and was at times material herein, a resident of Oneida, Kentucky, and over the age of majority. Plaintiff Rebecca Ann Sizemore is, and was at times

CASE NO. 6:06-CV-548 DCR

material herein, a resident of Oneida, Kentucky, over the age of majority, and the wife of Plaintiff Randall Sizemore.

5.      Plaintiff Shade Deaton is, and was at times material herein, a resident of Lost Creek, Kentucky, and over the age of majority. Plaintiff Kelie Jean Deaton is, and was at times material herein, a resident of Lost Creek, Kentucky, over the age of majority, and the wife of Plaintiff Shade Deaton.

6.      Plaintiff Toney Dye is, and was at times material herein, a resident of Pineville, Kentucky, and over the age of majority. Plaintiff Sheryl Markett Dye is, and was at times material herein, a resident of Pineville, Kentucky, over the age of majority, and the wife of Plaintiff Toney Dye.

7.      Plaintiff Sammy Faris is, and was at times material herein, a resident of Corbin, Kentucky, and over the age of majority. Plaintiff Deborah Charlene Faris is, and was at times material herein, a resident of Corbin, Kentucky, over the age of majority, and the wife of Plaintiff Sammy Faris.

8.      Plaintiff Chris Caudill is, and was at times material herein, a resident of London, Kentucky, and over the age of majority. Plaintiff Felicia Dawn Caudill is, and was at times material herein, a resident of London, Kentucky, over the age of majority, and the wife of Plaintiff Chris Caudill.

9.      Plaintiff Charles Sanborn II is, and was at times material herein, a resident of Barbourville, Kentucky, and over the age of majority. Plaintiff Tamara Lynn Sanborn is, and was at times material herein, a resident of Barbourville, Kentucky, over the age of majority, and the

2

CASE NO. 6:06-CV-548 DCR

wife of Plaintiff Charles Sanborn II.

10.    Plaintiff Stephen Christopher Taylor is, and was at times material herein, a resident of Corbin, Kentucky, and over the age of majority. Plaintiff Andrea Taylor is, and was at times material herein, a resident of Corbin, Kentucky, over the age of majority, and the wife of Plaintiff Stephen Christopher Taylor.

11.    Plaintiff Donald Greg Wells is, and was at times material herein, a resident of London, Kentucky, and over the age of majority. Plaintiff Sherri Lorraine Wells is, and was at times material herein, a resident of London, Kentucky, over the age of majority, and the wife of Plaintiff Donald Greg Wells.

12.    Plaintiff Joshua Caleb Stacy is, and was at times material herein, a resident of Corbin, Kentucky, and over the age of majority.

13.    Plaintiff Jason Engle is, and was at times material herein, a resident of Gray, Kentucky, and over the age of majority. Plaintiff Yvette Mattie Engle is, and was at times material herein, a resident of Gray, Kentucky, over the age of majority, and the wife of Plaintiff Jason Engle.

14.    Plaintiff Timothy Marcum is, and was at times material herein, a resident of Kay, Kentucky, and over the age of majority.

15.    Plaintiff David House is, and was at times material herein, a resident of London, Kentucky, and over the age of majority. Plaintiff Lana House is, and was at times material herein, a resident of London, Kentucky, over the age of majority, and the wife of Plaintiff David House.

16.   Plaintiff Denver Pennington is, and was at times material herein, a resident of London, Kentucky, and over the age of majority.

17.   Plaintiff David Pennington is, and was at times material herein, a resident of London, Kentucky, and over the age of majority. Plaintiff Cleta Pennington is, and was at times material herein, a resident of London, Kentucky, over the age of majority, and the wife of Plaintiff David Pennington.

18.   Plaintiff Stephen King is, and was at times material herein, a resident of London, Kentucky, and over the age of majority. Plaintiff Anna Rachelle McClure is, and was at times material herein, a resident of London, Kentucky, over the age of majority, and the wife of Plaintiff Stephen King.

19.   Plaintiff George Hibbard is, and was at times material herein, a resident of Manchester, Kentucky, and over the age of majority.

20.   Plaintiff Ricky Trent is, and was at times material herein, a resident of Barbourville, Kentucky, and over the age of majority. Plaintiff Kathy Trent is, and was at times material herein, a resident of Barbourville, Kentucky, over the age of majority, and the wife of Plaintiff Ricky Trent.

21.   Plaintiff Jeff Wagers is, and was at times material herein, a resident of Lily, Kentucky, and over the age of majority. Plaintiff Angela Marie Wagers is, and was at times material herein, a resident of Lily, Kentucky, over the age of majority, and the wife of Plaintiff Jeff Wagers.

22.   Plaintiff Timothy Burns is, and was at times material herein, a resident of London,

CASE NO. 6:06-CV-548 DCR

Kentucky, and over the age of majority. Plaintiff Theresa Burns is, and was at times material herein, a resident of London, Kentucky, over the age of majority, and the wife of Plaintiff Timothy Burns.

23.   Plaintiff Bobby Allen is, and was at times material herein, a resident of London, Kentucky, and over the age of majority. Plaintiff Tracy Allen is, and was at times material herein, a resident of London, Kentucky, over the age of majority, and the wife of Plaintiff Bobby Allen.

24.   Plaintiff Justin Gomez is, and was at times material herein, a resident of Corbin, Kentucky, and over the age of majority.

25.   Plaintiff James Helton is, and was at times material herein, a resident of Corbin, Kentucky, and over the age of majority.

26.   Plaintiff Jamey Hill is, and was at times material herein, a resident of Corbin, Kentucky, and over the age of majority. Plaintiff Chrystal Kae Hill is, and was at times material herein, a resident of Corbin, Kentucky, over the age of majority, and the wife of Plaintiff Jamey Hill.

27.   Plaintiff Clifford Robert Sage is, and was at times material herein, a resident of Lily, Kentucky, and over the age of majority. Plaintiff Kimberly Dawn Deerfield Sage is, and was at times material herein, a resident of Lily, Kentucky, over the age of majority, and the wife of Plaintiff Clifford Robert Sage.

28.   Plaintiff Billy Rhodes is, and was at times material herein, a resident of Corbin, Kentucky, and over the age of majority. Plaintiff Jamie Rhodes is, and was at times material

herein, a resident of Corbin, Kentucky, over the age of majority, and the wife of Plaintiff Billy Rhodes.

29.   Plaintiff Danny Pittman is, and was at times material herein, a resident of East Bernstadt, Kentucky, and over the age of majority.

30.   Plaintiff Gary Patterson is, and was at times material herein, a resident of Canon, Kentucky, and over the age of majority.

31.   Plaintiff Barry Lockard is, and was at times material herein, a resident of Corbin, Kentucky, and over the age of majority. Plaintiff Mildred Lockard is, and was at times material herein, a resident of Corbin, Kentucky, over the age of majority, and the wife of Plaintiff Barry Lockard.

32.   Plaintiff Bennie Swift is, and was at times material herein, a resident of Somerset, Kentucky, and over the age of majority. Plaintiff Sarah Beth Swift is, and was at times material herein, a resident of Somerset, Kentucky, over the age of majority, and the wife of Plaintiff Bennie Swift.

33.   Plaintiff Cecil David Spurlock is, and was at times material herein, a resident of Manchester, Kentucky, and over the age of majority. Plaintiff Elaine M. Spurlock is, and was at times material herein, a resident of Manchester, Kentucky, over the age of majority, and the wife of Plaintiff Cecil David Spurlock.

34.   Plaintiff Sean Lee Shupe is, and was at times material herein, a resident of Gray, Kentucky, and over the age of majority. Plaintiff Glenna Gail Shupe is, and was at times material herein, a resident of Gray, Kentucky, over the age of majority, and the wife of Plaintiff Sean Lee

CASE NO. 6:06-CV-548 DCR

Shupe.

35.    Plaintiff Stephen Bush is, and was at times material herein, a resident of Manchester, Kentucky, and over the age of majority. Plaintiff Lora Bush is, and was at times material herein, a resident of Gray, Kentucky, over the age of majority, and the wife of Plaintiff Stephen Bush.

36.    Plaintiff Dora Keley is, and was at times material herein, a resident of London, Kentucky, and over the age of majority.

37.    Plaintiff Humberto Alvarado is, and was at times material herein, a resident of London, Kentucky, and over the age of majority.

38.    The Plaintiffs are hereinafter referred to as the Plaintiff workers or the Plaintiff spouses, as appropriate for the context.

39.    Defendant Unarco Material Handling, Inc. ("Unarco") is, and at all times material was, a Tennessee corporation authorized to do business and doing business in the State of Kentucky, with its principal place of business in Tennessee. Defendant Unarco's registered agent for service of process is CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

40.    Defendant Unarco is subject to personal jurisdiction in this state pursuant to §454.210(2)(a), Ky. Stat. as this claim arises from Defendant Unaraco's transacting business in this Commonwealth, contracting to supply services or goods in this Commonwealth, and causing tortious injury by an act or omission in this Commonwealth, all as alleged in more detail below.

41.    Defendant Atlas Material Handling, Inc. ("Atlas") is, and at times material was, a California corporation authorized to do business and doing business in the State of Kentucky, with its principal place of business in Illinois. Defendant Atlas' registered agent for service of process is 'Corporation Service Company which will do business in California as CSC-Lawyers Incorporating Service,' P.O. Box 526036, Sacramento, California 95852-6036.

42.    Defendant Atlas is subject to personal jurisdiction in this state pursuant to §454.210(2)(a), Ky. Stat. as this claim arises from Defendant Atlas' transacting business in this Commonwealth, contracting to supply services or goods in this Commonwealth, and causing tortious injury by an act or omission in this Commonwealth, all as alleged in more detail below.

43.    Venue is proper in Laurel County, Kentucky pursuant to §454.210(4) in that Plaintiffs' cause of action arose in Laurel County.

## FACTUAL ALLEGATIONS

44.    At times material herein, the Plaintiff workers were employees of Wal-Mart Stores, Inc. ("Wal-Mart") working at the Wal-Mart Distribution Center 6097 (the "Distribution Center") located in the City of London in Laurel County, Kentucky.

45.    The Plaintiff workers' job at Wal-Mart included working inside a large, enclosed refrigerator/freezer building located at Wal-Mart which is used to store pallets of perishable foods on large systems of racks, which foods are distributed from the Distribution Center to fill orders placed by retail Wal-Mart stores. Employees, such as Plaintiffs, who worked in the Distribution Center would typically work long, busy shifts inside the refrigerator/freezer building in a below freezing environment, retrieving, moving, loading and unloading large quantities of

CASE NO. 6:06-CV-548 DCR

merchandise in order to perform Wal-Mart's necessary distribution functions.

46.   Wal-Mart wanted to purchase and have installed new rack systems for some of its distribution centers, including Distribution Center 6097.

47.   Defendant Unarco entered into a Contractor's Agreement with Wal-Mart Stores East, LP to provide and install rack systems and equipment at various Wal-Mart distribution centers (the "Unarco Contract").

48.   The distribution centers as to which Defendant Unarco was to provide and install the rack systems and equipment were, per the Unarco Contract, specified by purchase orders, and included Wal-Mart Distribution Center 6097 located in the City of London in Laurel County, Kentucky.

49.   In addition to Defendant Unarco's already existing duty to exercise due care in the performance of the work, pursuant to Paragraph 9 of the Unarco Contract, Defendant Unarco (specified therein as the "Contractor") specifically undertook responsibility for safety, and for initiating, maintaining and supervising all safety programs and precautions in the performance and conditions of the work under the contract. Paragraph 9 of the Unarco Contract provides, in pertinent part:

> SAFETY REQUIREMENTS. Contractor is totally responsible for safety. Contractor shall be responsible for initiating, maintaining and supervising all safety programs and precautions with the Work. Contractor shall at all times comply with all federal, state and local laws, rules and regulations (including but not limited to OSHA) relating to work plan conditions and safety.

50.   Defendant Unarco, upon information and belief, engaged the services of Defendant Atlas to assist Unarco in carrying out the work under its contract with Wal-Mart, and

CASE NO. 6:06-CV-548 DCR

specifically, with the work performed at Distribution Center 6097.

51.   The work to be performed at Wal-Mart Distribution Center 6097 under the Unarco Contract was the provision and installation of new pallet rack systems, and the overhaul of existing pallet rack systems, with such work being performed inside the refrigerator/freezer building.

52.   So as not to interrupt the ongoing daytime distribution operations taking place inside the refrigerator/freezer building, the work performed by the Defendants was conducted in night and early morning shifts lasting from 8 to 12 hours. Defendants were aware during the work at Distribution Center 6097 that after the Defendants' crews worked inside the refrigerator/freezer building during the night and early morning hours, Wal-Mart employees, which included the Plaintiff workers, would then come in and work inside the refrigerator/freezer building all day, for long shifts, performing the normal functions of the Distribution Center.

53.   The Defendants work was halted by Wal-Mart when Wal-Mart realized that its employees, including the Plaintiff workers, were suffering severe symptoms due to exposure to conditions inside the refrigerator/freezer building caused by the work being done by Defendants.

54.   The work performed by the Defendants' crew at Distribution Center 6097 involved the use of industrial cutting torches, including on painted metal, an extensive amount of welding, and the use and continuous running of at least two large, powerful generators, operated at times inside the building previously described.

55.   Defendants Unarco and Atlas knew, or should have known, that the work activities of Defendants inside the refrigerator/freezer building would produce significant and dangerous

levels of colorless, odorless carbon monoxide which Wal-Mart workers inside the building would have no way of detecting during their long work shifts in the Distribution Center. Defendants Unarco and Atlas knew, or should have known, that the work would produce other dangerous and noxious gases and fumes. Defendants Unarco and Atlas knew, or should have known, that said work could only be safely performed with full monitoring for carbon monoxide and other dangerous gases, and with the powerful generators being operated only outside the building, rather than inside the building as they were operated during the work at Distribution Center 6097.

56.    Despite the known dangerous and potentially lethal nature of the work, and despite Defendant Unarco's responsibility, including its specific contractual undertaking, to supervise, monitor, and perform the work to ensure that it was safely performed so as not endanger those who would be exposed to the environment of the work, including the Plaintiff workers, Defendant Unarco failed to supervise, or tender supervision to, Defendant Atlas or the workers performing the work under the Unarco Contract, with regard to the safe and proper performance of the work, or to otherwise undertake proper precautions for safety.

57.    Despite the known dangerous and potentially lethal nature of the work, and despite Defendant Atlas' responsibility arising from the performance of the work, to supervise, monitor and perform the work to ensure that it was safely performed so as not endanger those who would be exposed to the environment of the work, including the Plaintiff workers, Defendant Atlas failed to supervise the workers performing the work under the Unarco Contract, with regard to the safe and proper performance of the work, or to otherwise undertake proper precautions for

CASE NO. 6:06-CV-548 DCR

safety.

58.    Because Defendants Unarco and Atlas did not take reasonable steps to ensure that there was proper supervision over the performance of the work, or to ensure that the work area was properly ventilated, or to ensure that the equipment utilized in performing the work, including the generators, was used in a safe manner consistent with manufacturers' safety information and applicable safety standards, or to ensure that the work could otherwise be safely performed, the work was performed in such a grossly negligent way that high levels of poisonous carbon monoxide and/or other dangerous and noxious gases and fumes were generated and released into the enclosed refrigerator/freezer building hour after hour and day after day by the activities of Defendants' crews.

59.    Unbeknownst to the Wal-Mart workers, including the Plaintiff workers, poisonous gases and fumes accumulated inside the refrigerator/freezer building, and Plaintiffs were repeatedly exposed to toxic levels of carbon monoxide and/or other noxious fumes and gases during the period that Defendants performed their work at the Distribution Center. These dangerous conditions existed over days and resulted in many hours of continuous exposure to high levels of carbon monoxide consistent with the cause of permanent injuries to the Plaintiff workers, who, along with the Plaintiff spouses, were the victims of Defendants' failure to take proper safety precautions.

60.    Defendants Unarco and Atlas did not provide any warning to the employees of Wal-Mart, including Plaintiffs, about the invisible, colorless, odorless, dangerous and poisonous gases and fumes which were present inside the refrigerator/freezer building as a result of the

CASE NO. 6:06-CV-548 DCR

Defendants' grossly negligent work activities, and Plaintiffs continued to work long shifts in the Distribution Center in order to support themselves and their families and to accomplish their assigned work tasks.

61.     During the time that Defendants' work was being performed at Wal-Mart Distribution Center 6097, the Plaintiff workers, who had no warning or way of knowing that they were working in an environment poisoned with toxic gasses, began to exhibit symptoms that at first were thought by the employees to be associated with an outbreak of influenza. Their employer, Wal-Mart, ultimately realized that it had many ill employees, including Plaintiffs, and that the activities of Defendants Unarco and Atlas, including the running of powerful generators indoors, were causing the illnesses. Wal-Mart accordingly ordered the Defendants to stop their work activities in Distribution Center 6097 and to leave the premises. Without, and but for, the intervention of Wal-Mart, Defendants Unarco and Atlas would have continued their grossly negligent activities, and continued to pump poisonous gases into the work environment of the Wal-Mart employees, including the Plaintiff workers.

62.     As a direct and proximate result of the exposure to carbon monoxide and/or other noxious fumes and gases inside the refrigerator/freezer building, the Plaintiff workers, and each of them, sustained severe and permanent injuries, including permanent brain damage.

63.     The Plaintiffs have engaged the services of undersigned counsel in this matter and have agreed to pay a reasonable fee for counsel's services.

CASE NO. 6:06-CV-548 DCR

**COUNT I**
**CLAIM FOR NEGLIGENCE AND**
**GROSS NEGLIGENCE**

Plaintiffs are adopt and reallege Paragraphs 1 through 63 as if fully set forth herein, and further allege as follows:

64.   At all times material, Defendants Unarco and Atlas had a duty to exercise reasonable care for the health and safety of the Wal-Mart employees working inside the refrigerator/freezer building, including the Plaintiff workers.

65.   In addition to its existing duty to exercise due care, Defendant Unarco, under the terms of the Unarco Contract, specifically undertook and assumed the duty and responsibility for safety, and for initiating, maintaining and supervising all safety programs and precautions in the performance and conditions of the work. Defendant Unarco was required to exercise due care in the performance of that duty in order to protect persons, including the Plaintiff workers whose authorized presence at the site of the work was foreseeable and known, who were in the foreseeable zone of risk of increased harm created by the failure of Defendant Unarco to exercise due care with regard to the invisible, poisonous gases created by their work, and who relied upon Defendant Unarco to do so.

66.   Defendants Unarco and Atlas breached their duties of care to Plaintiffs through negligent acts and omissions which include the following:

a.   Defendants negligently, willfully and wantonly and with knowledge that Wal-Mart workers, including the Plaintiff workers, would be working inside the refrigerator/freezer building during the course of their work, failed to perform proper inspections or safety surveys of

14

CASE NO. 6:06-CV-548 DCR

the refrigerator/freezer building prior to commencing the work in order to determine that there were no unreasonably dangerous conditions associated with the building, and in order to evaluate whether the ventilation in the building was adequate to accommodate the carbon monoxide and other dangerous fumes that their work would generate;

b. Defendant Unarco wilfully and wantonly and with knowledge that Wal-Mart workers, including the Plaintiff workers, would be working inside the refrigerator/freezer building during the course of their work, failed to provide supervision over the work to ensure it was safely performed, and failed to initiate, maintain or supervise any safety plan for the performance of the work, and failed to monitor the work as it was performed to ensure that it was safely performed;

c. Defendant Unarco negligently, willfully and wantonly failed to properly evaluate or monitor the personnel on the job, including the personnel of Defendant Atlas, to ensure that the personnel was properly trained, skilled and experienced for the safe performance of the work

d. Defendant Atlas negligently, willfully and wantonly and with knowledge that Wal-Mart workers, including the Plaintiff workers, would be working inside the refrigerator/freezer building during the course of their work, failed to provide supervision over the work to ensure it was safely performed, and failed to initiate, maintain or supervise any safety plan for the performance of the work;

e. Defendants, prior to commencing the work, negligently, willfully and wantonly, failed to obtain any expert engineering advice on how to safely perform the work at Distribution Center 6097 despite having engineering resources available for such advice;

CASE NO. 6:06-CV-548 DCR

f.   Defendants negligently, willfully and wantonly and with knowledge that Wal-Mart workers, including the Plaintiff workers, would be working inside the refrigerator/freezer building during the course of their work, failed to make any provisions to monitor the level of carbon monoxide and other dangerous gasses inside the refrigerator/freezer building during the course of the work;

g.   Defendants negligently, willfully and wantonly failed to read and/or abide by the manufacturers' safety manuals and instructions for the proper operation of the generators and other equipment which was utilized by Defendants in performing the work;

h.   Defendants negligently, willfully and wantonly failed to adhere to applicable safety standards in the performance of the work;

i.   Defendants negligently, willfully and wantonly failed to properly train the workers performing Defendants' work inside the refrigerator/freezer building or to ensure that the work was performed by properly trained, skilled and experienced workers, despite the dangerous and potentially lethal nature of the work;

j.   Defendants negligently, willfully and wantonly continuously operated the generators inside the refrigerator/freezer building, rather than outside as required for safe operation, resulting in the pumping of poisonous, lethal gasses into the environment of the Plaintiff workers, hour after hour;

k.   Defendants negligently, willfully and wantonly failed to keep, maintain and/or use their equipment in a safe and proper manner so as not to expose the Wal-Mart employees, including the Plaintiff workers herein, to dangerous and noxious gases and fumes;

CASE NO. 6:06-CV-548 DCR

l.   Defendants negligently, willfully and wantonly failed to warn the Wal-Mart employees, including Plaintiffs herein, of the dangerous conditions inside the refrigerator/freezer building which were known to Defendants or which should have been known to Defendants had Defendants been acting with due care;

m. Defendants negligently, willfully and wantonly failed to take reasonable precautions to protect the Wal-Mart employees, including the Plaintiff workers, from harm;

n.   Defendants negligently, willfully and wantonly failed to provide appropriate protective equipment and/or devices that would prevent injury to the Plaintiff workers herein from dangerous conditions inside the refrigerator/freezer building;

o.   Defendants negligently, willfully and wantonly failed to use reasonable care in connection with providing ventilation of the refrigerator/freezer building during the course of their work;

p.   Defendants negligently, willfully and wantonly failed to comply with applicable regulations and safety requirements as to proper use of their equipment and the performance of their work;

q.   Defendants negligently, willfully and wantonly failed to monitor the levels of poisonous gasses in the refrigerator/freezer building during the course of the work, and to evaluate and monitor the cumulative build-up of such gasses from working in the refrigerator/freezer building and running the generators inside, day after day;

r.   Defendants negligently, willfully and wantonly failed to conduct safety meetings with Wal-Mart during the course of the work to evaluate and monitor whether the work was

17

CASE NO. 6:06-CV-548 DCR

having an adverse impact on Wal-Mart employees working in the refrigerator/freezer building, including the Plaintiff workers;

s.   Defendants negligently, willfully and wantonly failed to halt their operations, or to modify their operations such that they would be performed in a safe manner, when the Plaintiff workers began to exhibit symptoms of exposure to poisonous and toxic gases during the course of the work.

67.   The acts and omissions of Defendants Unarco and Atlas constitute negligence and gross negligence and were undertaken with a reckless disregard for the lives and safety of the Wal-Mart employees, including the Plaintiff workers and the Plaintiff spouses.

68.   As a direct and proximate result of the negligence and wrongful acts of Defendants Unarco and Atlas, the Plaintiff workers, and each of them, suffered grievous harm and bodily injury and are severely and permanently injured.

69.   As a direct and proximate result of the negligence of Defendants, the Plaintiff workers, and each of them, are permanently injured, have incurred and will in the future incur medical expenses for the treatment of their injuries, have in the past and/or will in the future incur a loss of earnings and earning capacity; have in the past and will in the future suffer severe and permanent bodily injuries; have in the past and will in the future suffer from physical and mental anguish; and have in the past and will in the future suffer from humiliation and embarrassment.

WHEREFORE the Plaintiffs, and each of them, pray for judgment against Defendants, for compensatory damages, punitive damages, reasonable attorney's fees, costs and disbursements,

CASE NO. 6:06-CV-548 DCR

together with statutory interest on all accrued claims, and further pray for such other relief as this Court may deem just and proper.

## COUNT II
## LOSS OF CONSORTIUM

Plaintiffs adopt and reallege Paragraphs 1 through 69, and further allege as follows:

70.   As a further direct and proximate result of the negligence of the Defendants, the Plaintiff spouses, and each of them, have in the past, and will in the future suffer damages from losses of their husbands' society, services, income, consortium, and companionship.

WHEREFORE the Plaintiffs demand judgment against the Defendants for the Plaintiff spouses for compensatory damages, punitive damages, reasonable attorneys' fees, costs and disbursements, together with statutory interest on all accrued claims, and such other relief as this Court may deem just and proper.

CASE NO. 6:06-CV-548 DCR

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all issues so triable of right.

Respectfully submitted,

HERREN & ADAMS LAW OFFICE
148 North Broadway
Lexington, Kentucky 40507-1229
Telephone (859) 254-0024
Facsimile (859) 254-5991
               -and-
RUSSO APPELLATE FIRM, P.A.
6101 Southwest 76th Street
Miami, Florida 33143
Telephone (305) 666-4660
Facsimile (305) 666-4470
               -and-
DON RUSSO, P.A.
7990 Red Road
Miami, Florida 33143
Telephone (305) 665-7171
Facsimile (305) 665-7146

Counsel for Plaintiffs


By:_____
      DON RUSSO
      Florida Bar No. 183780