UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| WILLIAM HARRIS ASHER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 6: 06-548-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| UNARCO MATERIAL HANDLING, INC., and ATLAS MATERIAL HANDLING, INC., | ) ) ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | **AND ORDER** |
| | ) | |
| V. | ) | |
| | ) | |
| RACK CONVEYOR INSTALLATION, INC., | ) ) | |
| | ) | |
| Third-Party Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court for consideration of Defendant Atlas Material Handling, Inc.'s ("Atlas") and Defendant Unarco Material Handling, Inc.'s ("Unarco") motions for leave to file third-party complaints against Wal-Mart [Record Nos. 95, 103] and motions for reconsideration of the Court's Order dated August 28, 2007. [Record Nos. 97, 102] For the reasons discussed herein, the Court will deny these motions.

**I.    Background**

This action arises out of an alleged discharge of carbon monoxide gas in the enclosed freezer section of the Wal-Mart Distribution Center ("Distribution Center") in London,

Kentucky. The Plaintiffs claim that the incident occurred between November 29 and December 12, 2005. The Plaintiffs also contend that the work performed in the evenings by Atlas and Unarco caused the discharge, resulting in the Plaintiffs' injuries. More specifically, the Plaintiffs assert that Asher and Unarco acted negligently in operating propane-powered welders inside the Distribution Center, resulting in their exposure to carbon monoxide gas. The Plaintiffs are all either past or present employees of the Distribution Center and their spouses.

The Plaintiffs initially filed their Complaint on November 21, 2006, in the Laurel Circuit Court alleging claims for negligence and loss of consortium. The Defendants removed the action to this Court on December 18, 2006. Thereafter, a Scheduling Order was entered on February 1, 2007, directing, among other things, that the Defendants file any amended pleadings or motions to join additional parties by August 1, 2007. On February 16, 2007, Defendant Atlas filed a motion for leave to file a third-party complaint against RCI, alleging that RCI performed the work on behalf of Atlas. The Court granted Atlas' motion on February 23, 2007. Subsequently, on July 17, 2007, the Court granted the Plaintiffs' motion for leave to file an amended complaint, which added over thirty new Plaintiffs to the proceeding.

On August 28, 2007, the Court denied RCI's, Atlas' and Unarco's additional motions to join as third-party defendants: Wal-Mart, Miller Electric Manufacturing, Co., ("Miller"), and Whayne Supply Co. ("Whayne"). The Court found that granting the motions to implead would result in unjust delay and prejudice to the Plaintiffs that outweighed any potential prejudice to the Defendants in pursuing a later action for indemnity with respect to Miller and Whayne, and

that RCI's motion to implead Wal-Mart was not appropriate for third-party practice. [Record No. 85]

Unhappy with this result, Atlas and Unarco have now filed motions for reconsideration of the Court's Order denying their motions to implead, as well as separate motions for leave to file third-party complaints against Wal-Mart. The motions for leave were filed in September, 2007, well beyond the Court's deadline of August 1, 2007. The Plaintiffs and non-party Wal-Mart have objected to the Defendants' motions, and the matters stand submitted at this time.

**II.    Discussion**

    **A.    Motions for Reconsideration**

Asher and Unarco claim that the Court erred in finding that their claims against Whayne and Miller would be more appropriately addressed in a separate action for indemnity. In support, they cite Kentucky's statute regarding apportionment of fault, KRS § 411.182. However, based on Asher and Unarco's clear assertions in their motions and pleadings, it is apparent that they would not be entitled to the apportionment instruction and that, because of the delay and prejudice to the Plaintiffs,[1] any claims for indemnity should be pursued in a separate action.

In *Degener v. Hall Construction Corp.*, 27 S.W.3d 775 (Ky. 2000), the Supreme Court of Kentucky thoroughly addressed the law regarding apportionment and indemnity and held that

---

[1] Despite Atlas and Unarco's contentions that the proposed impleaders would not result in delay or prejudice to the Plaintiffs, Atlas has previously filed a motion for an extension of time on the grounds that discovery in this case is a "mammoth undertaking." [*See* Record No. 71, p. 5] According to Atlas, the number of depositions will most likely be "well over 100 and potentially as many as 200 depositions in total." [*Id.* at 5] In that motion, Atlas assumed that the Court would grant the proposed impleader. [*Id.* at 6] Accordingly, the Court fails to see how Atlas and Unarco can now assert that the addition of two, or possibly three, new parties would not result in substantial delay when a number of the depositions have already been taken and any newly-added parties would be entitled to full and complete discovery.

common law indemnity survived and was distinct from the right to apportionment codified at KRS § 411.182. The court noted that, "[w]hile it is common practice for tort defendants to file third-party complaints seeking 'indemnity and/or contribution,' these two concepts represent separate and distinct remedies which have different historical origins and are applicable to completely different fact situations." *Degener*, 27 S.W.3d at 778.

Under Kentucky law, "apportionment of liability arose from statutory provisions permitting contribution and several liability among joint tortfeasors in pari delicto." *Id.* at 780. Section 411.182 of the Kentucky Revised Statutes "is simply a codification of this common law evolution of the procedure for determining the respective liabilities of joint tortfeasors." *Id.* at 779.[2] According to the Kentucky Supreme Court, apportionment applies when two or more

---

[2] In full, KRS § 411.182 provides as follows:

(1) In all tort actions, including products liability actions, involving fault of more than one (1) party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:

   (a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

   (b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection (4) of this section, and shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a

tortfeasors are acting *in pari delicto*, that is, when they "are guilty of concurrent negligence of substantially the same character which converges to cause the plaintiffs damages." *Degener*, 27 S.W.3d at 778.

"Indemnity, on the other hand, applies where 'both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.'" *Johnson v. Uptown Cafe Co.*, 2005 U.S. Dist. LEXIS 7391, at *3 (W.D. Ky. Feb.7, 2005) (quoting *Degener*, 27 S.W.3d at 780). "Unlike the right to contribution, the right to indemnity is of common law origin and is available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari delicto." *Degener*, 27 S.W.3d at 780. "Indemnity reflects the equitable notion that even where two tortfeasors cause injury to another, in certain circumstances the more 'responsible' or more 'culpable' tortfeasor should bear the entire cost of the injury." *Johnson*, 2005 U.S. Dist. LEXIS 7391, at *3-4 (citing *Union Carbide Corp. v. Sweco, Inc.*, 610 S.W.2d 932, 934 (Ky. Ct. App. 1981)).

In the often-cited case of *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 224 S.W.2d 165, 167 (Ky. 1949), Kentucky's highest court addressed the application of indemnity to a premises liability action. There, a pedestrian was injured by a manhole cover on the hotel's property that had been left unsecure by an employee of the fuel company. *Brown*, 224 S.W.2d at 166. The

---

person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.

KRS § 411.182 (2007).

pedestrian obtained a judgment against both the hotel and the fuel company, and the verdict specified that each should pay an equal part. *Id*. Thereafter, the hotel company pursued an action for indemnity against the fuel company, claiming that fuel company was primarily liable because its employee failed to replace the manhole cover, directly resulting in the plaintiff's injuries. *Id*.

In applying the law of indemnity, the court explained that "[w]here one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is, nevertheless, thereby exposed to liability to the person injured, or was only technically or constructively at fault, as from the failure to perform some legal duty of inspection and remedying the hazard, the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained." *Id*. at 167. Accordingly, the Court concluded that,

> [t]he primary, efficient and direct cause of the accident was the positive antecedent negligence of the fuel company's employee in failing to replace the manhole lid securely. This exposed the hotel company to liability. Its fault was a negative tort in failing to check upon the act of the coal delivery man and in failing to observe its affirmative duty to the public to see that the way was free of obstruction or the pitfall. Both were in fault but not the same fault toward the party injured. The employees of the two companies were not acting jointly or concurrently or contributorily in committing the tort. They were not in pari delicto.

*Brown Hotel Co.*, 224 S.W.2d at 167.

The Supreme Court of Kentucky has repeatedly noted that the right to apportionment of liability "has no application to the common law right of a constructively or secondarily liable party to total indemnity from the primarily liable party with whom he/she is not in pari delicto."

*Degener*, 27 S.W.3d at 780. Accordingly, where it is clear that a plaintiff can only state a claim for indemnity, Section 411.182 is inapplicable.[3] However, the Court notes that Section 411.182 expressly applies to products liability actions. *See* KRS § 411.182(1); *see also Caterpillar, Inc. v. Brock*, 915 S.W.2d 751, 753 (Ky. 1996) (holding that § 411.182 applies to all tort actions, including products liability actions, and implicitly repeals § 411.320(1)).

Here, the Plaintiffs have not stated a claim for products liability in their Amended Complaint. Instead, they have opted to pursue an action for negligence against Atlas and Unarco for failing to exercise due care in the performance of the work and for failing to satisfy their contractual responsibilities "for safety, and for initiating, maintaining and supervising all safety

---

[3] For example, in the recent case of *Jackson v. Tullar*, 2007 Ky. App. LEXIS 170, at * 11-12, (Ky. Ct. App. June 1, 2007), the Kentucky Court of Appeals held that, under the principles enunciated in *Degener*, it was improper to include a dram shop in an apportionment instruction in an action against a drunk driver. The Court noted that,

> apportionment between the intoxicated tortfeasor and the dram shop is improper because the actions that give rise to liability – directly causing injury and improperly serving alcohol to someone who later causes injury, respectively – do not constitute concurrently negligent acts. Rather, they are separate and independent actions of two fundamentally different characters. The intoxicated tortfeasor's conduct proximately caused injury to the plaintiff, while the dram shop's actions did not. KRS 413.241(1). As observed in *DeStock*, "[a]bsent causation, there can be no comparative fault." *DeStock, supra*, at 958. And the intoxicated tortfeasor is primarily liable while the dram shop is only secondarily liable with a right of indemnity against the tortfeasor.
>
> However, no such differences exist between two dram shops. Multiple dram shops that violate KRS 413.241 would have committed similar acts that would have had a similar relationship to a plaintiff's ultimate injury. In light of this similarity of circumstance and character, liability among multiple dram shops is properly apportioned under comparative fault principles.

*Id*. at * 11-12. The court further noted that, "since the actions of the dram shop and the intoxicated tortfeasor are separate, the two 'ought not to be considered in pari delicto." *Id*. at *8 (quoting *Destock #14, Inc. v. Logsdon*, 993 S.W.2d 952, 957 (Ky. 1999)). Although the court in *Jackson* addressed the application of a specific Kentucky statute regarding the liability of liquor stores, KRS § 413.241, the general principles of comparative fault and apportionment are relevant to the case currently before the Court.

programs and precautions in the performance and conditions of the work." [Record No. 63, p. 9] Therefore, the express inclusion of products liability actions in the purview of Section 411.182 does not control the current case.

Rather, the theory presented by the Plaintiffs in their complaint appears to be more analogous to the situation presented in *Brown Hotel Co., supra*. Unarco hired Atlas to perform the work, and the Plaintiffs claim that Unarco and Atlas are subject to liability for failing to exercise due care and for failing to satisfy Unarco's contractual duty to keep the premises safe. As in *Brown*, these Defendants' fault is a negative tort of failing to observe their affirmative duties. *See Brown*, 224 S.W.2d at 167.

In fact, Unarco even contends in its motion for reconsideration that "[a]ny negligence of these defendants is arguably passive" and "secondary and technical." [Record No. 102, p. 18] Relying on this Court's Order noting that impleader is *permissible* under such circumstances, Unarco contends that,

> [a]ny negligence of these defendants is arguably passive as opposed to RCI's active negligence. However, all defendants' liability is founded on the proposition that RCI should not have operated the generators in the freezer, which in turn is dependent upon their knowledge that this was an unsafe practice. To the extent it can be said that these defendants should have known of the hazards posed by using the generators inside the Wal-Mart facility, Whayne Supply and Miller had affirmative duties under Kentucky law to warn the ultimate user of their products of such hazards, and bear a significant degree of any fault assessed by failing to so warn.

[Record No. 102, p.18-19] These statements make clear that Unarco is presenting a claim for indemnity against a party with whom they are not *in pari delicto*,[4] and the Supreme Court of

---

[4] Although RCI, Atlas, and Unarco allegedly acted "in pari delicto," that is, "guilty of concurrent negligence of substantially the same character which converges to cause the plaintiffs damages,"*see Degener*,

Kentucky has expressly held that apportionment has no application to such claims. *See Degener*, 27 S.W.3d at 780 (holding that the right to apportionment of liability "has no application to the common law right of a constructively or secondarily liable party to total indemnity from the primarily liable party with whom he/she is not in pari delicto"). Although impleader is permissible with regard to claims for indemnity, it is not required under KRS § 411.182.[5] Instead, the Court must balance the interests and prejudices of the parties and determine whether impleader is appropriate under the circumstances.

Accordingly, the Court finds that Asher and Unarco's reliance on KRS § 411.182 is misplaced, as the right to apportionment could not apply in the present action. And, as the Court stated in its previous order, because the claims for indemnity may be pursued in a separate action, the prejudice to the Plaintiffs in allowing the proposed impleader outweighs any potential prejudice to the Defendants in pursuing a separate action. *See e.g., Ingersoll-Rand Co. v. Rice*, 775 S.W.2d 924, 930 (Ky. Ct. App. 1988) ("The underlying conception in comparative fault may be that no defendant should have liability for damages greater than its degree of fault, but Ingersoll-Rand is not prejudiced by the absence of an apportionment instruction. Ingersoll-Rand's claim against Jackson Drilling Company is simply preserved for later

---

27 S.W.3d at 778, it cannot be said that the alleged actions of Miller and Whayne are of "substantially the same character." The claims against RCI, Atlas and Unarco all involve their duties to provide a safe work environment, while the claims sought to be asserted against Miller and Whayne involve the distinct duty to warn of the potential danger of operating propane-welders in an enclosed area.

[5]    Moreover, because Unarco contractually agreed to be "totally responsible for safety," apportionment is not appropriate or required in this case. *See Kevin Tucker & Assoc., Inc. v. Scott & Ritter, Inc.*, 842 S.W.2d 873, 875 (Ky. Ct. App. 1992) ("In short then, unless the defendant is vicariously liable for, or has contracted to be liable for, the acts or omissions of another, apportionment is required." (citing *Dix & Assoc. v. Key*, 799 S.W.2d 24 (Ky. 1990)).

disposition which could serve to offset Rice's judgment against it.") Therefore, Atlas and Unarco's motions for reconsideration will be denied.

### B. Motions to File Third-Party Complaints

As noted in the previous Order addressing third-party complaints, Federal Rule of Civil Procedure 14 governs third-party practice and provides that a defendant must obtain leave to file a third-party complaint more than ten days after serving its answer. Fed. R. Civ. P. 14(a). The decision whether to grant a motion for leave to implead is a matter committed to the discretion of the district court, and the "exercise of discretion is essentially a process of balancing the prejudices." *Kelley v. United States*, 1985 U.S. Dist. LEXIS 15807, at *7 (W.D. Mich. Sept. 19, 1985); *Gen. Elec. Co. v. Irvin*, 274 F.2d 175, 178 (6th Cir. 1960) (citations omitted). "Competing interests includ[e] the avoiding of duplicative litigation versus ensuring that parties already before the Court receive reasonably expeditious adjudication." *Diar v. Genesco, Inc.*, 102 F.R.D. 288, 290 (N.D. Ohio 1984). Further, the timeliness of the motion is an "urgent factor governing the exercise of such discretion." *Irvin*, 274 F.2d at 178

"Under Fed. R. Civ. P. 14(a), a third party complaint is permitted only when the third party plaintiff is attempting to transfer liability for the plaintiff's claim against him." *Baker v. Pierce*, 812 F.2d 1406 (6th Cir. 1987). For a third-party claim to be properly before the Court, "[t]he third-party defendant's liability must be (1) owed to the impleading party; (2) based on the underlying claim against the impleading party; and (3) derivative of the impleading party's liability." *Gookin v. Altus Capital Partners*, 2006 U.S. Dist. LEXIS 12980, at *7 (E.D. Ky. Mar. 24, 2006). According to the Court in *Gookin*, "if the third-party plaintiff claims that 'it was him,

not me,' then impleader is inappropriate." *Id*. (*quoting Watergate Landmark Condo. Unit Owners' Assoc. v. Wiss, Janey, Elstner Assoc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987)). "However, if the third-party plaintiff's claim is that if he is liable, it is 'only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse [him] for all or part . . . of anything [he] must pay,' then impleader is permissible." *Id*. (alterations in original).

Generally, motions for leave to file a third-party complaint "are allowed if impleader will avoid circuity and duplication of actions," but "[i]f allowing impleader would place too great a burden on the original plaintiff, the motion should be denied." *Kelley*, 1985 U.S. Dist. LEXIS 15807, at *7. "Courts have denied motions to implead where they were filed approximately a year after the action was filed, and where the grant of the motion would entail extensions of discovery or delay of trial." *Korex*, 1987 U.S. Dist. LEXIS, at *6 (citations omitted).

Here, Atlas and Unarco contend that Wal-Mart must be brought into the action to properly apportion liability and to avoid confusion because some of the Plaintiffs have signed covenants not to sue, which would entitle the Defendants to an apportionment instruction as to Wal-Mart on those Plaintiffs' claims. However, as this Court noted recently, "§ 411.182 provides a right to an apportionment interrogatory or finding where underlying substantive fault exists, but it does not provide a substantive cause of action itself." *Hall v. MLS Nat'l Med. Evaluations, Inc.*, 2007 U.S. Dist. LEXIS 33909, at *8 (E.D. Ky. May 8, 2007).

Nor is the potential of confusion an appropriate reason to grant leave to file a third-party complaint. Rather, as outlined in Moore's Federal Practice, Civil § 14.04 (2007),

> [a]n impleader claim is proper only to assert that the third-party defendant is liable *to the party impleading it (usually the defendant)*. Despite the clear language of the impleader rule on this point, some defendants continue to attempt to implead a third party on the basis of the third-party defendant's direct liability to the *plaintiff*. The courts properly reject such attempts and limit impleader to those third parties who are derivatively liable to the defendant.

3 James Wm. Moore et al., Moore's Fed. Practice, Civil § 14.04 (2007) (emphasis in original).

Although Atlas acknowledges in its motion that "[i]n order to prevail on a motion to add a ThirdParty Defendant, Atlas must make some showing that the proposed ThirdParty Defendant may be liable to the movant," both Atlas and Unarco have failed to make any such showing. [See Record No. 95, 103 (noting that Wal-Mart has a duty to the Plaintiffs, but failing to even assert that Wal-Mart may be liable to Atlas or Unarco for the Plaintiffs' injuries).] Atlas and Unarco repeatedly cite to duties that Wal-Mart owed to the Plaintiffs, as an employer and under federal law, but these claims are not sufficient to warrant granting the proposed impleader.

The Defendants claim that the Court has allowed "the cart to get before the horse" in considering the appropriateness of the proposed impleader. [Record No. 115, p.2] In support of this contention, they cite to the Kentucky Court of Appeals' statement that,

> [t]hird-party defendants may often be entitled to dismissal on the grounds that they cannot be liable to the third-party plaintiff. Cf. CR 14.01 (defendant may bring in one who may be liable to him for all or part of the plaintiff's claim). This does not mean that defendants should not assert these third-party claims; for if there is never an 'active assertion of a claim' against the third-party; liability cannot be apportioned to him." *Id*.

[Record No. 115, p.2 (quoting *Kevin Tucker & Assoc. Inc.*, 842 S.W.2d at 873) ]

Here, however, the Defendants have failed to even attempt to assert that Wal-Mart is liable to them as third-party plaintiffs. Instead, Unarco states that,

> [i]n this case, RCI had sought to join Wal-Mart within the deadlines imposed by the scheduling order, so neither Unarco nor Atlas understood the necessity of them asserting their own third party complaints at that time, given that these defendants desired Wal-Mart's joinder solely for apportionment purposes and not for the purpose of asserting direct affirmative claims against plaintiffs' employer. Again, delay is measured from discovery of the need for impleader, not from the time the lawsuit began. In this case, the need for impleader only arose after the court overruled RCI's motion to implead Wal-Mart.

[Record No. 115, p.3] As Unarco acknowledges in the above-cited quote, the current motions for leave to join Wal-Mart violate this Court's scheduling order. The motions were filed approximately ten months after the Plaintiffs filed their Complaint, and approximately nine months after Atlas and Unarco filed their Answers.

As noted previously, impleader is only appropriate when the party sought to be joined is derivatively liable. It is not appropriate when the third-party plaintiff presents an "it was him, not me" claim; that is, a claim of direct liability between the party sought to be joined and the plaintiff. *See Gookin*, 2006 U.S. Dist. LEXIS 12980, at *7, 10 (noting that "[l]iability must be derivative rather than direct even were the third-party claim arises out of the same transaction as the underlying claim."); *see also Diar*, 102 F.R.D. at 290 ("In order to prevail on a motion under Fed. R. Civ. P. 14(a), the defendant must make some showing that the proposed third party defendant may be liable to the movant.").

Here, Atlas and Unarco contend that Wal-Mart breached its duty to the Plaintiffs and should thus be included in this action for purposes of apportionment. Although the Plaintiffs may have a claim against Wal-Mart for this alleged negligence, Atlas and Unarco have failed to even attempt to assert any duty or relationship which indicates derivative liability as required

under Rule 14.  Therefore, their untimely motions for leave to file a third-party complaints against Wal-Mart under a theory of apportionment will be denied.

### IV.     Conclusion

For the reasons discussed herein, it is hereby

**ORDERED** that Defendants Unarco and Atlas' motions for reconsideration of the Court's Order dared August 28, 2007, [Record Nos. 97, 102] and motions for leave to file a third-party complaint against Wal-Mart [Record Nos. 95, 103] are **DENIED**.

This 15th day of October, 2007.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge