UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| WILLIAM HARRIS ASHER, et al., )<br>)<br>Plaintiffs, )<br>)<br>V. )<br>)<br>UNARCO MATERIAL HANDLING, )<br>INC., and ATLAS MATERIAL )<br>HANDLING, INC., )<br>)<br>Defendants. ) | Civil Action No. 6: 06-548-DCR<br><br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Unarco Material Handling, Inc.'s ("Unarco") motion for summary judgment. [Record No. 249] Because Unarco undertook the specific duty to provide safety in connection with the rack repair work, and because genuine issues of material fact exist regarding Unarco's potential liability to the Plaintiffs, the motion will be denied.

**I.     BACKGROUND**

As this Court has summarized on numerous, previous occasions, this action arises out of an alleged discharge of carbon monoxide gas in the enclosed freezer section of the Wal-Mart Distribution Center ("Distribution Center") in London, Kentucky, between November 29, 2005, and December 12, 2005. The Plaintiffs contend that the work performed in the evenings by Unarco and Defendant Atlas Material Handling, Inc. ("Atlas") caused the discharge, resulting in the Plaintiffs' injuries. More specifically, the Plaintiffs assert that Atlas and Unarco acted

negligently in operating propane-powered welders inside the Distribution Center, resulting in their exposure to carbon monoxide gas.  The Plaintiffs are all either past or present employees of the Distribution Center and their spouses.

In October 2005, Unarco and Wal-Mart entered into a contract in which Unarco agreed to provide "Materials and Installation of Equipment at various Distribution Centers as provided by Purchase Order(s) for the Wal-Mart FYE 2007."  [Record No. 249, Ex.A]   The contract expressly defined the parties' relationship as "that of an independent contractor," and Unarco agreed to be "totally responsible for safety" in connection with the work.  [*Id.* at pp.3, 5] Further, Unarco promised to "be responsible for initiating, maintaining and supervising all safety precautions and programs with the work," as well as to "not dump, spill, release or otherwise dispose of, at the job site or as a result of the Work, any hazardous o toxic substance or waste." [*Id.* at p.3, 4]

In conjunction with this contract, Wal-Mart provided Unarco with a purchase order to perform repairs to the existing rack system at the Distribution Center in London, Kentucky. [Record No. 249, Ex.C]  Thereafter, Unarco entered into a subcontract with Atlas on October 31, 2005, in which Atlas agreed to provide "all supervision, labor, equipment, and tools . . . to receive, unload, safekeep, store, and erect and/or install certain materials, which are to remain the property of Unarco . . ." [Record No. 249, Ex.D, p.2]  Additionally, Atlas agreed "to assume toward Unarco all obligations and responsibilities that Unarco assumes toward the General Contactor, or Owner . . ."  [*Id.* at p.3]

In its motion for summary judgment, Unarco contends that it cannot be held liable for the alleged injuries to the Plaintiffs because it "neither owed nor assumed any duties to the plaintiffs, either under common law negligence principles or as a matter of contract." [Record No. 249, p.6] According to Unarco, the Plaintiffs cannot be considered third-party beneficiaries of the contract between Unarco and Wal-Mart, and even if they were beneficiaries, the contract required that any claims be brought in Arkansas rather than Kentucky. Additionally, Unarco contends that it did not owe any common law duties to the Plaintiffs and that it delegated any such duties to Atlas as the subcontractor. Finally, Unarco asserts that it is entitled to summary judgment on any claims for punitive damages under Kentucky law.

In response, the Plaintiffs concede that they are not attempting to bring a contract claim under the agreement between Unarco and Wal-mart. However, the Plaintiffs assert that Unarco assumed the duty to provide safety in connection with the work and, therefore, owed a common law duty to the Plaintiffs pursuant to the "undertaker's doctrine" as set forth in the Restatement (Second) of Torts, § 324A and adopted by the Kentucky Supreme Court in *Louisville Gas & Electric Co. v. Roberson*, 212 S.W.3d 107 (Ky. 2006). Regarding the Plaintiffs' punitive damages claim, the majority of the Plaintiffs state that they have not asserted such claims. [Record No. 262, p.20] However, Plaintiffs Donald Gregory Wells and Sherri Wells contend that they are entitled to punitive damages because Unarco was grossly negligent in failing to ensure the safety of the rack repair project. [Record No. 263, pp.7-8]

**II.    LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 983 (E.D.Ky. 1993). However, once a moving party has met its burden of production, "'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D.Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits to support its claims. *Celotex*, 477 U.S. at 324.

In reviewing a party's motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, and summary judgment is appropriate whenever that non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

### III. ANALYSIS

#### A. The "Undertaker's Doctrine"

To establish a claim for negligence under Kentucky law, a plaintiff must prove that "(1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the standard by which his or her duty is measured; and (3) consequent injury." *Jenkins v. Best*, 250 S.W.3d 680, 2007 Ky. App. LEXIS 353, at *18. The determination of whether a duty is exists is a question of law. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.*, 724 S.W.2d 228, 229 (Ky.App. 1986).

In *Louisville Gas & Electric Co. v. Roberson*, 212 S.W.3d 107 (Ky. 2006), the Supreme Court of Kentucky adopted the "so-called 'undertaker's doctrine' as set forth in the Restatement (Second) of Torts, § 324A(b)." *Roberson*, 212 S.W.3d at 111. "Section 324, which is premised on the 'good Samaritan' doctrine, provides that a party who voluntarily assumes a duty through affirmative conduct may be liable in tort of he fails to perform that duty with reasonable care." *McAtee v. Fluor Constructors Int'l, Inc.*, 1999 U.S. App. LEXIS 21040, at *14 (6th Cir. Aug. 27, 1999). Section 324A(b) states, in relevant part,

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . . (b) he has undertaken to perform a duty owed by the other to the third person.

Restatement (Second) of Torts § 324A(b) (1965).

The threshold issue in an action under § 324A is generally whether the defendant specifically undertook to render services to the plaintiffs or for the benefit of the plaintiffs. *See Good v. Ohio Edison Co.*, 149 F.3d 413, 420 (6th Cir. 1998); *McAtee*, 1999 U.S. App. LEXIS 21040, at *16 ("An actor's specific undertaking of the services allegedly performed without reasonable care is a threshold requirement to section 324A liability.") (citations omitted). This "undertaking" can be established by contract or by affirmatively assuming responsibility for the safety of third persons. *See McAtee*, 1999 U.S. App. LEXIS 21040, at *16; *Roberson*, 212 S.W.3d at 111 ("It is quite elementary that a duty to exercise the proper degree of care may have its origin, as here, in a contract.") (citations omitted).

However, with regard to contractual undertakings of the safety of third persons, the Sixth Circuit has cautioned that a plaintiff must demonstrate a defendant "specifically undertook to secure his safety." *McAtee*, 1999 U.S. App. LEXIS 21040, at *22 (noting that "general contractual language falls far short of describing the particularized and targeted conduct required to create a legal duty in tort under § 324A"). Likewise, the scope of the contract or undertaking both "defines and limits" the defendant's duty. *Id.* (quoting *In re TMJ Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1493 (8th Cir. 1997)). A defendant can only be held liable under § 324A if "the alleged tortfeasor's performance is to be substituted *completely* for that of the party on whose behalf the undertaking is carried out." *BP Exploration & Oil, Inc. v. Jones*, 558 S.E.2d 398, 405-06 (Ga. Ct. App. 2001) (emphasis in original). "While § 324A(b) might be met if a parent only takes over one aspect of the subsidiary's duty to provide a safe workplace, such as for the instance the safety for a particular piece of equipment rather than the safety of the entire

plant, it is still necessary that the parent supplant the subsidiary's duty with respect to that aspect completely." *Bujol v. Entergy Servs.*, 922 So.2d 1113, 1136 n.30 (La. 2004).

In the present case, the Plaintiffs contend that Unarco completely undertook the duty to provide safety in connection with rack repair project at the Distribution Center. They assert that this liability is premised on Unarco's agreement with Wal-Mart to be "totally responsible for safety" and "for initiating, maintaining and supervising all safety precautions and programs with the work." [Record No. 249, Ex.C] The Plaintiffs further note that the contract between Unarco and Wal-Mart prevented Wal-Mart from exercising "any control whatsoever" over Unarco's employees in the performance of the agreement.

In response, Unarco contends that it cannot be held liable under the undertaker's doctrine because it never actually performed any "undertaking" in connection with the rack repair work. According to Unarco, it "did not personally engage in any affirmative acts under any of the relied-upon safety provisions in the contract between itself and Wal-Mart, and such affirmative acts are a prerequisite to application of § 324A." [Record No. 274, p.8] Additionally, Unarco contends that it did not completely assume responsibilities for the safety of Wal-Mart's employees because Wal-Mart did not delegate all its responsibilities to Unarco in the contract. Finally, Unarco contends that, if tort duties do exist as a result of the contract, it delegated any such duties to Atlas, as Atlas agreed "to assume toward Unarco all obligations and responsibilities that Unarco assumes toward the General Contractor, or Owner . . . ." [Record No. 249, Ex.D, p.3]

In *Lousiville Gas & Electric Co. v. Roberson*, the Supreme Court of Kentucky expressly held that a contract could be the source of a duty and liability under § 324A(b). *Roberson*, 212 S.W.3d at 111. In that case, the electric company entered into an agreement to provide and maintain street lamps at certain intersections, and a pedestrian was struck by an automobile at an intersection with a malfunctioning lamp. The trial court granted summary judgment, finding that no common law duty existed, but the Supreme Court reversed. In applying § 324A, the court noted that, "[i]t is quite elementary that a duty to exercise the proper degree of care may have its origin, as here, in a contract." *Id*. Additionally, the court in *Roberson* expressly held that nonfeasance, *i.e.*, the failure to act, could subject a defendant to liability under § 324A. The Court explained that,

> [c]onsistent with the Restatement rules, the defendant is of course subject to liability if he assumes a duty by making a safety promise, and then negligently performs it, causing injury. That is a simple case of misfeasance and neither privity nor nonfeasance rules apply. . . . The cases are not always clear whether liability depends upon active negligence or whether nonfeasance would suffice, but liability is imposed and the very fact that courts do not actually notice the distinction is itself evidence that they are entirely willing to impose liability for negligent nonperformance of a safety promise.

*Roberson*, 212 S.W.3d at 111 (citations omitted); *see also Jenkins*, 250 S.W.2d 680, 2007 Ky. App. LEXIS 353, at *36 (holding that "nonfeasance could be the basis of liability under Section 324A").

Here, Unarco contracted to be "totally responsible" for safety in connection with the rack repair work. It further contracted to initiate and maintain safety programs and precautions in connection with the work. Although Unarco never actually performed any affirmative acts at the Distribution Center, these contract provisions clearly establish a duty to provide a safe work

environment for Wal-Mart's employees under §324A(b). *See McAtee*, 1999 U.S. App. LEXIS 21040, at *22 (noting that §324A(b) requires that the alleged tortfeasor specifically undertake the particular safety aspect in the contract). In other words, the contract itself provides the undertaking, and no additional affirmative act is necessary as argued by Unarco.

Additionally, Unarco's agreement to provide safety in connection with the rack repair is sufficient to satisfy § 324A, and it is immaterial that Wal-Mart did not delegate all its responsibilities with regard to the safety of the Plaintiffs. Unarco agreed to be "totally responsible" for safety in connection with the rack repair work, and this particular duty was completely delegated. The requirements of Section 324A are satisfied so long as the alleged tortfeasor completely supplants the duty with respect to a particular aspect of safety, such as the rack repair work in this case. *See Bujol*, 922 So.2d at 1136 n.30 ("While § 324A(b) might be met if a parent only takes over one aspect of the subsidiary's duty to provide a safe workplace, such as for the instance the safety for a particular piece of equipment rather than the safety of the entire plant, it is still necessary that the parent supplant the subsidiary's duty with respect to that aspect completely.").

Further, it cannot be said that Unarco completely delegated all its responsibilities with respect to safety in connection with the rack repairs through its subcontract agreement with Atlas. In *McAtee v. Fluor Constructors International, Inc.*, the Sixth Circuit held that a delegation of the duty of safety must be done with specificity. *McAtee*, 1999 U.S. App. LEXIS 21040, at *22. In that case, FD Engineers and Constructors, Inc. ("FDEC") entered into an agreement with the Tennessee Valey Authority ("TVA") to perform "modification, maintenance

and construction services at TVA fossil and hydro facilities, including TVA's Shawnee Fossil Plant in McCracken County, Kentucky." *Id*. at *2. FDEC then subcontracted the work to several other companies, including Fluor Constructors International, Inc. ("FCI") and Strategic Organizational Systems Environmental Engineering Division, Inc. ("SOS"). An employee of SOS was injured while installing a heat trace wire and brought suit against all the companies, including FCI.

The Sixth Circuit held that the general language in the subcontract between FDEC and FCI delegating responsibilities for performance of the work was insufficient to establish a duty on the part of FCI under § 324A. The Court noted that "Plaintiff must demonstrate that FCI specifically undertook to secure his safety with respect to the heat trace wire. . . . In sum, the general contractual language falls far short of describing the particularized and targeted conduct required to create a legal duty in tort under § 324A." *Id*. at *22. In this case, the Court does not believe that Atlas' assumption of all obligations and responsibilities owed by Unarco to Wal-Mart meets this high standard of specificity. Moreover, the express language of Atlas' assumption does not appear to be relevant to the circumstances of this case. Atlas agreed "to assume toward Unarco all obligations and responsibilities that Unarco assumes toward the General Contractor, or Owner." [Record No. 249, Ex.D, p.3] However, this action involves Unarco's responsibility to *third persons* in connection with the rack repair. As noted above, Unarco completely undertook the duty to provide safety in connection with the rack repair work, a duty which is owed to the Plaintiffs, not Wal-Mart.

Finally, although the Plaintiffs' reliance on the decision in *Williams v. Kentucky Department of Education*, 113 S.W.3d 145, 151 (Ky. 2005), is not dispositive, as that case involved the application of agency law, the Court finds the analysis instructive on this point. In applying the principals of vicarious liability, the court in *Williams* noted that, "when the principal is under a duty to provide protection for or to have care used to protect others and confides the performance of that duty to a servant or other person who causes harm to them by failing to perform that duty, vicarious liability attaches even if the agent or subagent is not a servant, *i.e.*, is an independent contractor." *Williams*, 113 S.W.3d at 151.

Here, Unarco agreed to be totally responsible for safety in connection with the rack repair work, and it cannot avoid liability through its complete failure to act on that duty. Accordingly, because Unarco completely undertook the responsibility for safety with respect to the rack repair at the Distribution Center, and because its duty was not properly delegated under the circumstances of this case, its motion for summary judgment will be denied.

### B. Punitive Damages

Unarco also contends that it is entitled to judgment as a matter of law on the Plaintiffs' claims for punitive damages. Although most of the Plaintiffs state that they are not asserting claims for punitive damages, Plaintiffs Donald Greg Wells and Sherri Wells (the "Wells Plaintiffs") assert that genuine issues of material fact exist that preclude summary judgment in favor of Unarco at this time. Further, the Wells Plaintiffs request that this Court reserve its ruling on the issue until expert discovery is complete. [Record No. 263, p.8]

In its motion for summary judgment, Unarco spends much effort dispelling any possible claims for punitive damages based on breach of contract and agency. [*See* Record No. 249, pp. 35-38, 39-40] Although Unarco provides some deposition testimony and evidence in support of its contention that it cannot be subject to punitive damages in connection with these claims, it offers absolutely no evidence regarding the Plaintiffs' claims for gross negligence. [*See Id.* p. 38] Instead, Unarco baldly asserts that "Plaintiffs have offered no evidence upon which a jury could find that Unarco's actions were so outrageous as to rise to the level of gross negligence." [*Id.*, p.39]

In response, the Wells Plaintiffs have also offered no deposition testimony or other evidence to support their claims. However, the Plaintiffs do assert that, "[c]ertainly, a jury could find that Unarco's complete failure to monitor the project and/or to take any action [to] ensure the safety of the project, despite expressly contracting to do, amounts to gross negligence." [Record No. 263, p.8]

As noted above, the party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *Keeneland Ass'n, Inc.*, 830 F. Supp. at 983. Summary judgment is appropriate only when the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Here, because Unarco has failed to come forward with any evidence other than its own assertions that the Plaintiffs cannot prove gross negligence in this case, the Court cannot *conclusively* find that no genuine issues of material fact exist. Therefore,

the motion for summary judgment on the Plaintiffs' claims for punitive damages will also be denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Unarco's Motion for Summary Judgment [Record No. 249] is **DENIED**.

This 26th day of June, 2008.



Signed By:
*Danny C. Reeves* DCR
United States District Judge