UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON
CIVIL ACTION NO. 6:06-CV-548 DCR

***ELECTRONICALLY FILED – 11.17.08***

WILLIAM HARRIS ASHER, et al.                                             PLAINTIFFS

v.    **MEMORANDUM CONCERNING APPORTIONMENT INSTRUCTIONS**

UNARCO MATERIAL HANDLING, INC., and ATLAS
MATERIAL HANDLING                                                        DEFENDANTS

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

Come the Plaintiffs, Donald Greg Wells and Sherri Wells, by counsel, and for their Memorandum Concerning Apportionment Instructions in this case, state as follows:

## BACKGROUND

On June 26, 2008, this Court, by the Honorable Danny C. Reeves, District Judge, entered a Memorandum Opinion and Order denying UNARCO's Motion for Summary Judgment (DE 283). Therein, the Court found that "UNARCO undertook the specific duty to provide safety in connection with the rack repair work". (DE 283 page 1.) Citing the contract between UNARCO and Wal-Mart, entered into by those parties in October 2005, the Court found that "UNARCO agreed to be 'totally responsible for safety' in connection with the work." (DE 249, EX. A pages 3, 5; DE 283, page 2) The Court also found that "UNARCO promised to 'be responsible for initiating, maintaining and supervising all safety precautions and programs with the work,' as well as to 'not dump, spill, release, or otherwise dispose of at the job site or as a result of the Work, any hazardous or toxic substance or waste'", again citing DE 249, EX. A pages 3, 4. (DE 283 page 2)

Based upon its analysis of the contract between UNARCO and Wal-Mart, particularly based upon UNARCO's agreement "to be totally responsible' for safety in connection with the rack repair work" and "to initiate and maintain safety programs and precautions in connection with the work," this Court found that UNARCO undertook the "duty to provide a safe work environment for Wal-Mart's employees" under the "undertaker's doctrine" which is set forth in Restatement (Second) of Torts, section 324 A which was adopted by the Kentucky Supreme Court in <u>Louisville Gas & Electric, Co. v. Roberson</u>, 212 S.W.3d 107 (Ky. 2006) (DE 283 page 8, 9)

In its memorandum in support of its motion for summary judgment, UNARCO represented that "it is actually undisputed that UNARCO was not present at the work site during the rack repairs, retained absolutely no control over the work" and abandoned its responsibilities under its contract with Wal-Mart to Atlas.  (DE 274 page 2)  Further, UNARCO asserted that it "did not personally engage in any affirmative acts under any of the relied upon safety provisions in the contract between itself and Wal-Mart".  (DE 274 page 8)  These factual representations are not disputed by Plaintiffs.  This Court agreed and found that "UNARCO never actually performed any affirmative acts at the distribution center" and further held that because "UNARCO agreed to be totally responsible for safety in connection with the rack repair work...it cannot avoid liability through its complete failure to act on that duty".  (DE 283 page 8, 11)

## ARGUMENT 1

Citing <u>Jenkins v. Best</u>, Ky. App. 250 S.W.3d 680 (2007) Judge Reeves held that "to establish a claim for negligence under Kentucky law, a Plaintiff must prove that '(1) a Defendant owed the Plaintiff a duty of care; (2) the Defendant breached the standard by which his or her duty is measured; and (3) consequent injury.'"  (DE 283 page 5)  "The determination of whether

a duty is [sic] exists is a question of law.  Pathways, Inc. v. Hammons, 113 S.W.3d 85, 89 (Ky. 2003)" (DE 283 page 5)

This Court has found, as a matter of law, that UNARCO owed a duty of care to the Wal-Mart employees including Plaintiffs herein.  Therefore, the analysis of whether an apportionment instruction against ATLAS or Wal-Mart is appropriate must next consider the questions of the nature of UNARCO's duty and of whether or not there was a breach of the duty of care by UNARCO which would establish its liability to the Plaintiffs for any injury which they have suffered.  These questions have also already been answered in Judge Reeves' opinion and order.  As set forth above, UNARCO undertook the duty to be totally responsible for the safety of the rack repair work and to initiate and maintain the safety programs and precautions with respect to the work.  By its own admission, UNARCO took absolutely no action to perform the duties which is had undertaken.  As Judge Reeves observed, "'a party who voluntarily assumes a duty through affirmative conduct may be liable in tort of [sic] he fails to perform that duty with reasonable care.' McAtee v. Fluor Constructors Int'l, Inc., 1999 U.S. App. LEXIS 21040, at *14 (6th Cir. Aug. 27, 1999)."  Since UNARCO failed to perform its duty at all, there can be no issue of its failure to exercise reasonable care.  "A duty voluntarily assumed cannot be carelessly abandoned with out incurring liability for injury resulting from the abandonment."  Louisville Cooperage Co., Inc. v. Lawrence, Ky., 230 S.W.2d 103, 105 (1950).

Therefore, it has been established as the law of this case that UNARCO undertook both the duty to be totally responsibility for safety of the rack repair work and to initiate and maintain safety programs and precautions with the work and, finally, undertook not to permit the release of a toxic substance, such as carbon monoxide.  It has been further established that UNARCO

failed to perform its duty. Plaintiffs' claims against UNARCO are based upon its failure to perform any of these duties.

The allegations of negligence against ATLAS and those which UNARCO makes against Wal-Mart are of an entirely different nature and character. Plaintiffs' claims against ATLAS and the claims of negligence against Wal-Mart made by UNARCO are based upon the actual performances of the rack repair. It is undisputed that the rack repair crew operated two (2) propane powered generators in the Wal-Mart freezer warehouse for as many as twelve (12) hours per day for as many as twelve (12) days between November 29, 2005 and December 12, 2005. It is also undisputed that these generators produce carbon monoxide as a byproduct in their exhaust. It is further undisputed that carbon monoxide is a hazardous or toxic substance which, if present in the atmosphere can cause injury and damage ranging from temporary discomfort through permanent brain damage to death. It is further undisputed that during the hours of operation, the propane generators were not configured to exhaust to the outside and further that there was no ventilation of the freezer warehouse which could draw the carbon monoxide to the outside. It is undisputed that the Plaintiff employees of Wal-Mart were exposed to carbon monoxide during their work shifts from November 29, and thereafter. Clearly, operation of these generators within the closed space of this warehouse, without any provision for venting the exhaust to the outside, is a breach of the duty of reasonable care. That, too, is undisputed and cannot be argued otherwise.

The claims against ATLAS and the allegations of negligence against Wal-Mart then are of an entirely different character and nature from the claims against UNARCO. Therefore, in the absence of contract, UNARCO could be entitled to maintain claims of common law indemnity

against ATLAS and against Wal-Mart however, as will be discussed below, UNARCO is not entitled to apportionment instructions against either.

## WAL-MART AND ATLAS

From a common law and statutory standpoint, in considering UNARCO's entitlement to an apportionment instruction against ATLAS, whose negligence in causing the accumulation of carbon monoxide in the freezer is undisputed and against Wal-Mart, assuming that UNARCO could introduce evidence of Wal-Mart's negligence, in that same regard, sufficient to convince a jury of its negligence, the Court must first consider the Kentucky Supreme Court opinion in Degener v. Hall Contracting Corp., Ky., 227 S.W.3d 775 (2000). The Degener opinion, authored by Justice William Cooper, actually concerns two (2) cases. The first, Degener v. Hall Contracting Corp, involved a scenario in which police officers were injured when a homemade bomb, constructed by Degener and an accomplice, using dynamite stolen from Hall Contracting, Corporation, exploded. The police officers filed suit against Hall based upon a claim that it had failed to meet industry standards in the storing of the dynamite which permitted the theft. Hall first obtained summary judgment from the Trial Court based upon the "firefighter's" rule. When that decision was reversed and remanded by the Court of Appeals, Hall filed a third-party complaint against Degener and his accomplish. However, rather than seeking an apportionment against those Defendants pursuant to KRS 411.182, Hall sought full common law indemnity. The issue of his entitlement to an indemnity claim was the issue before the Kentucky Supreme Court.

The second case which is addressed in the opinion is the case of Salazar v. Korp II Limited Partnership d/b/a Dupont Surgery Center. In that case, Korp II had extended staff privileges to Salazar, a physician. A scrub technician employed by Korp II, who had been

assigned to assist Salazar in surgeries, filed suit against Korp II alleging a violation of the Kentucky Civil Rights Act for creation of a hostile work environment based upon Salazar's unwanted sexual advances. Korp II filed a third-party complaint against Salazar but, rather than seek an apportionment against Salazar pursuant to the statute, Korp II also sought full common law indemnity in its third-party complaint. Korp II's entitlement to its indemnity claim against Salazar was also the subject of Justice Cooper's opinion.

In analyzing the issue before the Court, Justice Cooper reviewed the common law of contribution and apportionment. First, he observed that the right to contribution only arises "when two (2) or more joint tortfeasors are guilty of concurrent negligence of *substantially the same character* which converges to cause the Plaintiff's damages." Id. page 778. Joint tortfeasors whose concurrent negligence is of substantially the same character were said to be "in pari delicto". Lexington Country Club v. Stevenson, Ky. 390 S.W.2d 137, 143 (1965).

Justice Cooper points out, there was no common law right to contribution. Rather, three (3) statutes in Kentucky combined to provide for contribution among this class of tortfeasors. The first, now KRS 454.040, was enacted in 1839 and permitted a jury to enter a verdict of joint or several damages against joint tortfeasors.

The second statute, now KRS 412.030, permitted contribution among joint tortfeasors on a pro rata basis. Id. page 779. Through Court interpretation, this issue evolved into an apportionment of causation between or among joint tortfeasors in the case of Orr v. Coleman, Ky., 455 S.W.2d 59 (1970) in which the Kentucky Court of Appeals held that in a suit against joint tortfeasors, the jury should be instructed to determine the total amount of damages to be awarded and then to fix percentages of causation attributable to each joint tortfeasor by apportionment. Id.

Finally, in the case of <u>Hilen v. Hayes</u>, Ky., 673 S.W.2d 713 (1984) the Court did away with what had been a contributory negligence bar to recovery by ruling that a contributorily negligent Plaintiff could still recover a portion of her damages from an at-fault Defendant. KRS 411.182, Kentucky's Apportionment Statute, which was adopted in 1988 is, as Justice Cooper observed, simply a codification of this common law evolution of the procedure for determining the respective liabilities of joint tortfeasors. Thus, according to Justice Cooper, joint tortfeasors no longer have any claim for contribution since their respective liabilities have already been determined (Id.)

Having disposed of the issue of contribution, Justice Cooper next analyzed indemnity claims. First he observed that the right to indemnity is a common law right which "is available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari delicto. (Id. page 780). Without recounting Justice Cooper's analysis in full herein, it should be observed that an important part of his analysis deals with the distinction between joint tortfeasors who are "in pari delicto-equal fault", and therefore, who are entitled to obtain an apportionment of fault instruction and those tortfeasors who are not in pari delicto and who are, therefore, not entitled to apportionment but who may have a claim for indemnity against the other tortfeasor. <u>Brown Hotels, Co. v. Pittsburgh Fuel Co.</u>, 311 Ky. 396, 224 S.W.2d 165 (1949). According to this analysis, Justice Cooper ruled that the apportionment of liability "has no application to the common law right of a constructively or secondarily liability party to total indemnity from the primarily liable party with whom he/she is not in pari delicto (citations omitted) (Id. page 781).

The nature of Plaintiffs' claim against UNARCO is of a very similar nature to the claims at issue in the <u>Degener</u> and <u>Salazar</u> cases. As described in the <u>Degener</u> opinion, the allegations were that Degener and his accomplice were the active wrong-doers and that Hall's Contracting's

liability was based upon its negligence in storing the dynamite thereby failing to prevent the making of the bomb which injured the policeman. The allegations in Salazar were that Salazar was the active wrong-doer and that claim against Korp II's was that it had failed to prevent the sexual assault and harassment of the Plaintiff. Justice Cooper analogized these cases to the case of Crime Fighters Patrol v. Hiles, Ky., 740 S.W.2d 936 (1987) in which a customer sued a restaurant for damages sustained when he was assaulted by another customer.

The claim against the restaurant was that is was aware of the tortfeasors violent nature and was negligent in failing to prevent the assault. Therein the Court held that even though the restaurant was liable for the customer's damage, because he was "not in pari delicto with his assailant, he was entitled to complete indemnity against the assailant." Id. page 781. Apportionment of liability would not be applicable.

Counsel for the Plaintiffs acknowledges that in Degener and the cases cited therein, there is no mention of an attempt by the defendants to obtain a comparative negligence instruction under KRS 411.182. Rather, it may be inferred that the Defendants sought indemnity, in an effort to recover from the other parties all of any verdict rendered against them, rather than an apportionment which would require them to satisfy a portion of any verdict.

Counsel has been unable to locate any reported Kentucky case in which a Defendant, not in pari delicto with other Defendants sought a comparative negligence instruction. However, counsel has found one (1) unpublished opinion of the Kentucky Court of Appeals which addresses this issue. In June, 2006, the Court of Appeals of Kentucky entered an opinion in the case of Ten Broeck Dupont, Inc. v. Brooks, 2006 WL 1562076 (Ky. App.). This opinion is cited herein pursuant to Ky. RCP 76.28 (4)(c). A copy of the unpublished opinion is attached hereto

as Exhibit B. Although discretionary review of that opinion was granted by the Kentucky Supreme Court on October 24, 2007, no decision has yet been published.

In that case, the Plaintiff, Brooks, sued the Defendant hospital on a claim that it negligently hired and retained an employee who raped the Plaintiff while she was a patient at the hospital. At trial, the Defendant hospital had sought a comparative negligence instruction under KRS 411.182, seeking to allocate fault between Plaintiff's assailant and Plaintiff. The Trial Court refused to give such an instruction. In affirming that decision, the Court of Appeals observed that "the jury's verdict was based upon the negligence of the hospital in hiring and retaining Gilbert [the assailant] and in deviating from the standard of care for patient safety". Id. page 5. Because the verdict was not based upon the assailant's negligence, the Court of Appeals agreed with the Trial Court that no comparative negligence instruction should have been given. Id.

The negligence claim against UNARCO, based upon its undertaking of the safety obligations with regard to the rack repair project are not the same as the claims for negligence in conducting the rack repair work which were asserted against ATLAS and which are alleged by UNARCO against Wal-Mart. Therefore, UNARCO is not entitled to an apportionment instruction against either of those entities.

Finally, there is a basic legal premise which would preclude an apportionment instruction in this case. Simply put, one who negligently creates a situation which leads to an injury is responsible for all of the damage caused by that injury, even though a subsequent actor has acted or has failed to act in a way that either directly causes the injury or contributes to the injury. This doctrine is illustrated by the holding in the case of Brown Hotel Co. v. Marx, 411 S.W.2d 911, 915 (Ky. 1967). In that case, the plaintiff was injured in a bathroom accident in his hotel

room. Id. at 913.  The defendant attempted to avoid its liability for the plaintiff's damages by claiming that the damages stemmed from improper medical treatment of the original injury, thereby relieving the defendant hotel of responsibility. Id. at 915.  To the contrary, the Court held that as long as the injured party exercised ordinary care to obtain treatment for the injury, the original negligent actor was responsible for all the damages caused by the injuries.

> Simply put, the rule is that an injured person is required to use ordinary care and reasonable diligence to secure appropriate treatment of the injury; when he has exercised that care, he may recover damages to the full extent of his injuries, even though the doctor engaged for such treatment omits to use the most approved remedy, or the best means of cure, or fails to exercise as high a degree of care or skill as another doctor might have.

Id., at 915.

This principle was reiterated by the Court in the case of Deutsch v. Shein, 597 S.W.2d 141 (Ky. 1980).  In that case, Dr. Shein ordered numerous diagnostic x-rays and other radiological tests to be performed on Mrs. Deutsch without performing a pregnancy test. Id. at 142.  A subsequent treating physician told Mrs. Deutsch there was a serious risk of damage to her unborn child. Id. at 143.  Based upon this advice, Mrs. Deutsch subsequently decided to have an abortion.  Id.  At trial, Dr. Shein introduced evidence that the amount of diagnostic radiation administered did not warrant a therapeutic abortion. Id.  Although a jury found Dr. Shein negligent, it excused him from liability because it found his failure to obtain a pregnancy test, coupled with the administration of x-rays, was not a substantial factor in causing Ms. Deutsch's injuries. Id.  The Supreme Court of Kentucky held that whether subsequent physicians provided Mrs. Deutsch with correct medical advice was not important, and that Dr. Shein's negligence in causing her to be irradiated while pregnant made him responsible for any injury and damage. Id. at 145.  In explaining its reasoning, the Court stated as follows:

> Having put Mrs. Deutsch in a position from which it was reasonable to seek the medical services of other doctors, Dr. Shein is responsible for any injury to her resulting from her exposure to the risk involved in these medical services. See Restatement, Torts 2d sec. 457, comment b., supra page 145.

Id., at 145.

In Deutsch v. Shein, the Court likened an actor's initial negligence to the effect of a snowball traveling down a hill, holding that even if the initial negligence is slight, the negligent actor is responsible for the consequences of his/her negligence, unless public policy dictates otherwise:

> The breach of the required standard of care by an actor can produce a result similar to that of a snowball rolling down a hill. The initial consequence of the snowball may be slight. But as the snowball rolls down the hill its increasing size and momentum take on a character of their own which can cause injury of a magnitude far beyond the imagination of the one who set the snowball in motion. Nevertheless, the law is that between the negligent actor and the injured innocent, the innocent should recover compensation, unless the law cuts off the expansion of the negligent actor's liability as a matter of public policy. For instance, the law might not, as a matter of policy, impose liability where the snowball has roared to the foot of the hill and disintegrated sending several rocks to neighboring peaks to begin the process anew.

Id. at 143.

In the case at bar, the law does not cut off Unarco's liability for the Plaintiff's injuries as a matter of public policy, as any subsequent negligence of Atlas and its borrowed servants does not amount to a superseding or intervening cause. As set forth in Williams v. Kentucky Department of Education, 113 S.W.3d 145, 151 (Ky. 2003), if the resultant injury is reasonably foreseeable from the view of the original actor, other factors causing to bring about the injury are not a superseding cause:

> "[I]f the resultant injury is reasonably foreseeable from the view of the original actor, then the other factors causing to bring about the injury are not a superseding cause." *NKC Hosps., Inc. v. Anthony,* Ky.App., 849 S.W.2d 564, 568 (1993) (citing William L. Prosser, *Law of Torts* 272 (4th ed.1978) and *Deutsch v. Shein,* Ky., 597 S.W.2d 141, 144 (1980)). The basic premise of a superseding cause is

that it is "extraordinary and unforeseeable." *House v. Kellerman,* Ky., 519 S.W.2d 380, 383 (1974); *see also Britton v. Wooten,* Ky., 817 S.W.2d 443, 451 (1991).

Williams, at 151. There is no question that it was reasonably foreseeable to Unarco that its complete failure to ensure the safety of the project, and failure to initiate, maintain, and supervise all safety precautions and programs, could result in an injury to Wal-Mart employees working in the location of the rack repair project. The foreseeability of injury occurring to Wal-Mart workers is the precise reason Unarco, which purported to be an expert in rack repair, undertook the responsibility for safety related to the project.

So long as it is foreseeable, subsequent negligent or even intentional criminal acts of third parties do not relieve the original negligent actor of liability for the full extent of damages caused by his/her preceding negligence. E.g., Britton v. Wooten, Ky., 817 S.W.2d 443 (1991). In Britton, it was alleged that a tenant's employees negligently piled flammable trash material next to a rented building in violation of regulations and codes of the Kentucky State Fire Marshall. Britton, at 444. A subsequent fire originating in the trash caused the building to burn down. Id. There was evidence that the fire in the negligently piled trash was intentionally set. Id. In reversing an opinion of the Court of Appeals, the Kentucky Supreme Court held "...whether the spark ignited in the trash accumulated next to the building was ignited negligently, intentionally or even criminally, or if it was truly accidental, is not the critical issue." Britton, at 451. Rather, the issue was whether or not it could be proven that the tenant caused or permitted the flammable materials to be placed against the building "...in a negligent manner which caused or contributed to the spread of the fire..." Id. at 451-452.

## **WAL-MART**

Based upon the contract between UNARCO and Wal-Mart, a copy of which is attached hereto as Exhibit A, Judge Reeves found that UNARCO undertook from Wal-Mart the duty to be

totally responsible for the safety of the rack repair work.  As an undertaker, UNARCO has no right to attempt to shift liability for any injuries caused by its failure to discharge the duties which it undertook back against Wal-Mart.  In addition, at paragraph 17 of the contract UNARCO agreed to "defend and hold harmless Wal-Mart" "against and from any and all lawsuits, claims, actions, damages (including reasonable attorneys fees and costs), obligations, liabilities, and liens arising from the work provided hereunder (including, without limitation, claims for personal injury, death and damage to property) asserted against Wal-Mart" therefore, UNARCO would have an obligation to pay Wal-Mart for any damages which might be assessed against it.

## CONCLUSION

As set forth above, UNARCO is not entitled to an apportionment instruction against either ATLAS or Wal-Mart both based upon the common law of Kentucky and, in the case of Wal-Mart, based upon the UNARCO-Wal-Mart contract and upon UNARCO's undertaking of the safety obligations related to the rack repair work.  In fact, by insisting upon an apportionment instruction against ATLAS, UNARCO may be waiving its right to seek indemnity.

Based upon those considerations and upon the holding in Judge Reeve's Memorandum Opinion and Order (DE 283), both the existence of UNARCO's duty to the Plaintiffs and of its breach of that duty by its failure to take any action at all in connection therewith, have been established.  The only issues left to be decided in this case have to do with Plaintiffs' injuries and damages resulting from UNARCO's breach of its duty and in the Wells' case, the issue of UNARCO's liability for punitive damages.

Respectfully submitted,

BY:   /s/ Stephen M. O'Brien, III
      Stephen M. O'Brien, III

        Garmer & O'Brien, LLP
        141 North Broadway
        Lexington, Kentucky  40507
        Telephone:  (859) 254-9352
        Facsimile:   (859) 233-9769
        Email: sobrien@garmerobrien.com

        Matthew Mazur
        Matthew Mazur, P.A.
        2655 Le Jeune Road, Suite 500
        Coral Gables, FL 33134
        Telephone:  (786) 206-4788
        Facsimile:   (786) 347-6042
        Email:  mmazurjr@mazur-law.com

        *Counsel for Plaintiffs, Donald Greg Wells*
        *& Sherri Lorraine Wells*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Don Russo | drusso@russopa.com |
| Lynn L. Audie | laudie@russopa.com |
| Elizabeth Russo | ekr@russoappeals.com |
| Thomas K. Herren | tom.herren@herrenadams.com |
| Todd Page | todd.page@skofirm.com |
| Amy Denise Cubbage | acubbage@fbtlaw.com |
| Charles S. Cassis | ccassis@fbtlaw.com |
| Douglas W. Langdon | dlangdon@fbtlaw.com |
| Brandon C. Jones | bjones@hmrkylaw.com |
| Carl Norman Fraizer | carl.frazier@skofirm.com |
| Chris Cashen | ccashen@wyattfirm.com |
| Eileen M. O'Brien | eileen.o'brien@skofirm.com |
| Perry M. Bentley | perry.bentley@skofirm.com |
| Charles C. Adams | chuck.adams@herrenadams.com |

        BY:   /s/ Stephen M. O'Brien, III
             Counsel for Plaintiffs