UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

WILLIAM H. ASHER, et al.,     )
     )
     Plaintiffs,     )     Civil Action No. 06-548-ART
     )
v.     )
     )     **MEMORANDUM OPINION**
UNARCO MATERIAL HANDLING,     )     **AND ORDER**
INC., et al.,     )
     )
     Defendants.     )

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This case presents an interesting choice of law question – whose law should the Court apply when the forum state (Kentucky) has minimal interests and the competing state (Illinois) does not have much of an interest either. While at first blush, this appears to be a difficult question, if Kentucky's presumption for its own law means anything, it means that a court must apply Kentucky's law when there are not overwhelming interests to the contrary.

### Background

This story begins in 2005. At that time, Atlas, an Illinois corporation, sold wire deck and provided rack repair services. R. 794, Ex. A at 14. With the help of an Illinois brokerage firm and a Chicago wholesale broker, Atlas searched for general liability insurance coverage. Because it did business all over the United States, Atlas's insurance proposals listed dozens of insured premises and additional insureds in different states. Atlas executed a contract with Lexington Insurance Company ("Lexington") providing coverage from November 2005 to November 2006. R. 794, Ex. K ("Lexington Policy") at 2. It included fourteen additional named insureds and

entities in thirty-nine different states. R. 794, Ex. R (Schedule of Additional Interests). The policy was paid for in Illinois and taxes were paid to the state of Illinois. R. 794, Ex. C ("Mesirow Dep.") at 23. Atlas and Lexington did not have any direct contact before this litigation began; they worked only through the brokers. R. 794, Ex. A at 11-12; R. 794, Ex. L ("Unarco Dep.") at 24.

In October 2005, Wal-Mart hired Unarco Material Handling, Inc. ("Unarco") to repair, replace, and install storage racks at its London, Kentucky Distribution Center. Unarco sub-contracted the rack repair work to Atlas, with whom it had a long-standing business relationship. *See* R. 794, Ex. N; Unarco Dep. at 18. Like Atlas, Unarco completed this type of work throughout the country. Unarco Dep. at 18-19. Unarco faxed Atlas a "Proposal and Subcontract," as well as a "Purchase Order" dated October 31, 2005. R. 794, Ex. N at 6-7 (capitalization omitted). The letter sent with these materials stated that "[a]ll insurance coverage must be up to date, and a copy must be in the Unarco file before any work can begin. Please take time to verify that Unarco has the most recent insurance certificate." *See id.* at 2. The materials identified Unarco as a Tennessee corporation and dictated that the "contract shall be governed by and enforced in accordance with the laws of the State of Tennessee." *See* R. 794, Ex. N at 13 ¶ 19. Unarco did not request to see Atlas's actual insurance policy and had no further discussions with Atlas regarding its coverage requirements. Unarco Dep. at 26-27.

Lexington had no knowledge of Atlas's involvement with the Wal-Mart rack repair operations before the tort complaint was filed in this litigation. Atlas did not add Unarco as a named additional insured under the policy in 2005 or 2006. Mesirow Insurance, the brokerage

firm, prepared certificates of insurance for Unarco as evidence of Atlas's coverage for each policy period from 2002 to 2008. *See* R. 794, Exs. T, U, V, W, and X. In Atlas's August 2005 Schedule of Certificate Holders under the policy, Unarco was not listed as an additional insured but as one of 342 certificate holders located across various states. R. 794, Ex. S at 18 ("This certificate is issued as evidence of coverage.").

Meanwhile, Atlas sub-contracted its installation work to Rack Conveyor Installations, Inc. ("RCI"). Work began on November 29, 2005. R. 1, Ex. A ¶¶ 32-33. The companies performed their work inside a refrigerator/freezer building at the Wal-Mart Distribution Center until December 12, 2005, when Wal-Mart realized that its employees, including the plaintiffs, were suffering symptoms due to dangerous and harmful conditions inside the building. *Id.* ¶ 34. In November 2006, the plaintiffs filed suit against Unarco and Atlas. *See* R. 1, Ex. A. Atlas filed a third-party complaint against RCI, R. 24, and Unarco filed cross-claims for contractual and common law indemnity against RCI, R. 67. The case eventually proceeded to trial in November 2008, and after six weeks of testimony, the parties all reached various agreements and settled the lawsuit.

In February 2009, Unarco filed an intervening complaint against Lexington for breach of contract, common law bad faith, and violation of the Unfair Claims Settlement Practices Act. R. 737. In October 2009, Unarco filed a motion for summary judgment on these claims, arguing that it was entitled to recovery as an additional insured under the Lexington/Atlas insurance contract. R. 767. Based on the policy, Unarco is only an additional insured if its liability is "arising out of" Atlas's work. Lexington Policy, Endorsement 11. It became clear that the choice of law issue

was central to resolving the dispute. The Court dismissed the summary judgment motion without prejudice in order to consider the choice of law question. R. 777. Unarco argues that Kentucky law, the law of the place where the underlying tort occurred, should apply. R. 793, R. 800. Lexington argues that Illinois law, the state of the named insured and where the contract was negotiated, should apply. R. 794, R. 799.

### Choice of Law Rules

When determining which state's substantive law to apply, federal courts sitting in diversity look to the conflict of laws rules in the forum state, in this case, Kentucky. *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990)). At the outset, a strong preference exists in Kentucky for applying Kentucky law. "On at least two occasions, [the Sixth Circuit has] noted this provincial tendency in Kentucky choice-of-law rules." *Wallace Hardware Co. Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (citing *Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 230-31 (6th Cir. 1997); *Harris Corp. v. Comair, Inc*., 712 F.2d 1069, 1071 (6th Cir. 1983)).

The Court only needs to go through the choice of law analysis when a conflict occurs between two states' laws. *Cf. Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005). If there were no conflict, Kentucky law would apply.[1] Here, a conflict exists between Illinois and

---

[1]    Lexington points to a recent decision from this district suggesting that under Kentucky law a false conflict does not require application of the forum state law. *Cincinnati Ins. Co. v. Crossman Cmtys P'ship*, No. 05-470, 2008 WL 852133, at *2 n.3 (E.D. Ky. Mar. 20, 2008). But the Sixth Circuit has been clear that if no conflict exists and a state has a presumption for applying its own law, its own law will apply. *Williams*, 138 F. App'x at 803. Kentucky indeed has a presumption for

Kentucky principles of contract interpretation. The Lexington policy would be interpreted differently in each state. Kentucky approaches all contract disputes from the reasonable expectations of the parties and resolves ambiguities in favor of the insured; it does not have a particular stance on how to analyze "arising out of."[2] Illinois, on the other hand, applies a fact-specific "but for" causation test to determine whether Unarco has additional insured rights under the Lexington policy.[3] Therefore, the Court applies Kentucky choice of law principles to this dispute.

---

applying its own law and would require a significant reason to displace it. Thus, under *Williams*, Kentucky law applies if there is no conflict.

[2]    *See Johnson v. Serv. Merchandise Co.*, 327 F. Supp. 2d 735, 737 (E.D. Ky. 2004) ("The rule of interpretation known as the reasonable expectations doctrine resolves an insurance-policy ambiguity in favor of the insured's reasonable expectations." (citing *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003))); *Travelers Indem. Co. and Hoar Constr., Inc. v. Westfield Ins. Co. and Turner Brooks Inc.*, No. 97-2190, 1999 WL 98586, at *3 (6th Cir. Jan. 26, 1999) ("While the parties have chosen to argue over the proper level of causation required for determining when liability "aris[es] out of" a subcontractor's work, their exercise is academic and not necessary to the outcome of this action. As the district court correctly found, absent express limiting language, broad or ambiguous language must be strictly construed against the insurer who drafted the contract in order to maximize coverage." (citing *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 480 (Mich. 1996))).

[3]    *See James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 487 (7th Cir. 2009) ("It is true that Illinois cases say that 'arising from' is satisfied by a showing of 'but for' causation." (citations omitted)); *Elec. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 346 F. Supp. 2d 958, 966 (N.D. Ill. 2004) ("every Illinois court that has found 'but for' causation in the additional insured context has done so because the injured party was . . . the named insured's employee." (footnote omitted)); *El Rincon Supportive Servs. Org., Inc. v. First Nonprofit Mut. Ins. Co.*, 803 N.E.2d 532, 540 (Ill. App. Ct. 2004) ("The 'reasonable expectations' doctrine is not recognized in Illinois." (quoting *Zurich Ins. Co. v. Northbrook Excess and Surplus Ins. Co. v. Raymark Indus., Inc.*, 494 N.E.2d 634, 645 (Ill. App. 1986))).

## Most Significant Relationship Test

In Kentucky, the Restatement's "most significant contacts" test applies to contract disputes. *Saleba v. Schrand*, 300 S.W.3d 177, 180-81 (Ky. 2009) (citing Restatement (Second) of Conflict of Laws (1971) [hereinafter RST]). "The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." RST § 188(1). "Kentucky law will apply to a contract issue if there are sufficient contacts and no overwhelming interests to the contrary . . . ." *Wallace Hardware*, 223 F.3d at 391 (quoting *Harris,* 712 F.2d at 1071 (citing *Breeding v. Mass. Indem. and Life Ins. Co.*, 633 S.W.2d 717 (Ky. 1982)); *cf. Weingartner Lumber & Supply Co., Inc. v. Kadant Composites, LLC,* No. 08-181, 2010 WL 996473, at *3 (E.D. Ky. Mar. 16, 2010) (citations omitted); *Dunn v. Cintas Corp. No. 2*, No. 8-CV-00148, 2009 WL 4060481, at *2 (W.D. Ky. Nov. 20, 2009).[4] Thus, there is a strong presumption in favor of applying Kentucky law unless Illinois has an overwhelming interest to the contrary.

When using the Restatement framework, a court must "balance principles, policies, factors, weights, and emphases to reach a result, the derivation of which, in all honesty, does not proceed with mathematical precision." *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 606 (6th Cir. 1996). The § 6(2) principles used to identify the state with the most significant relationship are:

---

[4]     Although *Wallace Hardware* abrogated the holdings of *Harris* and *Breeding*, its ruling did not affect this aspect of the choice of law analysis.  *See* 223 F.3d at 394.

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

RST § 6(2). When applying the § 6 principles, § 188(2) requires that courts consider the following contacts: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

"The key to our analysis is that the choice of law principles found in the Restatement need not be given equal weight in every circumstance, nor are they intended to be exclusive. They also are relatively elastic, and in some cases equivocal." *Int'l Ins.*, 86 F.3d at 606. Not all the Restatement principles apply to Lexington's alleged breach of contract. The factors that do apply do not identify a strong interest from either state. Thus, Kentucky law must apply without an overwhelming interest from Illinois.

## I. Kentucky's interest as the forum state

Kentucky has an interest in this action because the underlying tort occurred there. Even in a breach of contract action, the state where the tort giving rise to that action occurred has an interest in the outcome of the litigation. *See Nat'l Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 151 (6th Cir. 1992). Unarco's tort took place in Kentucky. That interest is a policy interest, § 6(2)(b), in protecting its citizens. In *International Insurance*, the Sixth Circuit applied the law

of the state where the tort occurred to a contract dispute. 86 F.3d at 607-08. The insured entity was an Ohio-based company that, like Atlas and Unarco, did business throughout the United States. *Id.* at 603. The court held that both the insured and the insurer had an interest in a consistent application of coverage within the state where the tort case is filed. *Id.* at 607 ("We are confident that the reasonable expectations of an insured, such as Crown, would be that, whatever a state allowed by way of recovery to a tort plaintiff, it would be covered by its insurance."). As a result, the court applied Louisiana law, where the tort occurred, despite the insured's location in Ohio.

The tort victims are not parties to this action, and so Kentucky's interest is not quite as strong as the forum state's interest in *International Insurance*. *See Mills Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 709 (6th Cir. 2002) ("Indeed, the only thing that ties this case to Michigan is an underlying tort case that was filed in Michigan and that has already been settled to the Michigan plaintiff's satisfaction. The issue that now remains not only involves no one from Michigan, but resolution of the issue will also have no impact on anyone from Michigan."). In *International Insurance*, the dispute was over who (Crown, International, or Stonewall) would pay the injured plaintiffs. Here, the injured plaintiffs settled with Unarco and have already been paid.

Additionally, some Kentucky courts have held that "[t]he location of the tort is not important in the analysis of which state's law determines the validity of or rights under a contract." *Flint v. Liberty Ins. Corp.*, 613 F. Supp. 2d 899, 902 (E.D. Ky. 2009) (citations omitted); *Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618, 620 (Ky. Ct. App. 1996) ("The

only contacts with Kentucky are that the accident occurred here and the tortfeasor resided here. Appellants argue that such contacts are sufficient for Kentucky law to apply. . .  Appellants apparently are confusing choice of law as it applies to torts and choice of law as it applies to contract actions." (citations omitted)).  But *Flint and Bonnlander* provide little guidance.  In both cases, there was a clear state other than Kentucky (where the tort occurred) with an overwhelming interest in the outcome of the litigation.  In both cases, the principal location of the insured risk (a car) was Indiana, the insured lived in Indiana, and the policy was written and issued there.  *Flint*, 613 F. Supp. 2d at 902; *Bonnlander*, 949 S.W.2d at 619-20.  As discusse below, Illinois has no similar interest here.

Additionally, Kentucky has a general interest in encouraging corporations to continue to do business within the state.  Applying Kentucky law, which favors the insured, comports with that interest.  It was not just an accident that occurred—Unarco and Atlas contracted to complete work in Kentucky.  Thus, the contract itself centered on work to be started and completed in Kentucky.  Moreover, overall consistency is important in litigation.  If, for example, Kentucky law required a corporation to pay plaintiffs with the assumption that all such corporations would be covered by their insurance, but then out of state law forbid such coverage, it would create an untenable inconsistency.  *See, e.g., International Insurance*, 86 F.3d at 607.  In the end, while Kentucky's contacts remain minimal, when compared to the other interests, they are enough to trigger the presumption.

## II. Illinois does not have an overwhelming interest

The Restatement factors help identify Illinois' relationship to the transaction and the parties. Ultimately, Illinois does not have the type of "overwhelming" interest in this action required to overcome the presumption in favor of applying Kentucky law.

It is even more difficult for Lexington to show that Illinois law applies because (1) it declined to place a choice of law provision in the contract and (2) the parties have an interest in uniformity that is met by applying the same law that applies to the tort to the contract.

### A. Lack of a choice of law provision (the parties' intent)

There is no clear indication that the parties intended Illinois law to apply. *See* RST § 6(2)(d); § 188 cmt. b ("[T]he protection of the justified expectations of the parties is of considerable importance in contracts . . . ."). Indeed, Unarco was not a signatory to the Lexington contract, and so Lexington and Unarco did not consult regarding their relationship before the tort occurred.

The presumption in favor of Kentucky law is all the stronger here because Lexington declined to include a choice of law provision in its insurance contract with Atlas. A choice of law provision would remove any guesswork for Lexington because Kentucky courts must honor them. *Cf. Wallace Hardware*, 223 F.3d at 393-95; § 6(2) cmt. j ("[I]t is in part because of this factor [protection of justified expectations] that the parties are free within broad limits to choose the law to govern the validity of their contract"). In *Watts*, 963 F.2d at 152, the Sixth Circuit adopted the logic of a district court, affirming its holding that the lack of a choice of law provision meant the insured should be governed by the state where the risk was located or the

accident occurred. "[T]he court noted in its opinion that though the insurance coverage extended to the corporation's agents and employees anywhere in the United States, the policy failed to provide that any particular state's law must be applied. The district court interpreted this omission to mean that the insurer intended its coverage to be governed by the state in which the claimant was using his vehicle." *Id.; see also Int'l Ins.*, 86 F.3d at 607 ("International is always able to protect itself by including a choice of law provision in its insurance policies if it chooses to do so.").

Lexington argues that it intentionally created its contract to comply with Illinois law for surplus line insurance carriers, R. 799 at 6, and "[g]enerally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state," § 6 cmt. g. This shows some interest in applying Illinois law. There were steps that Lexington could have taken, however, to protect this interest, especially when it knew that Atlas conducting business throughout the United States.

Lexington did not know about Atlas's business relationship with Unarco or the work to be completed in Kentucky when it issued the policy. But Lexington still had reason to anticipate exposure in states other than Illinois. Lexington knew from the 342 insurance certificates issued to different corporations each year that Atlas conducted business all over the country. Its policy included coverage throughout the United States. Thus, Lexington had to have known that it could be called to defend Atlas in almost any state. "It seems reasonable that parties to insurance policies providing coverage anywhere in North America would expect the policies to be given

effect under the law of any jurisdiction in which the insured required coverage." *Meijer, Inc. v. Gen. Star Indem. Co.*, No. 94-1152, 1995 WL 433592, at *11 (6th Cir. July 21, 1995) (citing *Watts*, 963 F.2d at 152). What is more, Lexington concedes that it would not always argue for Illinois law to apply to the contract's interpretation. Therefore, while it did not specifically anticipate a risk in Kentucky, Lexington did not have a justified expectation that Atlas' business would remain in Illinois either.

### B. Interest in uniformity

Lexington's interest in predictable interpretations of its insurance contract, RST §§ 6(2)(a), (f), also does not confer an overwhelming interest on Illinois. Since Atlas (and Unarco) does business in many different states, each state could interpret the contract differently, causing uncertainty and potential forum shopping. However, Lexington knew that its policy would insure Atlas's business in many different states. It could have adopted a choice of law provision to guarantee predictability if that was what it truly wanted. *Watts*, 963 F.2d at 151; *cf. Meijer,* 1995 WL 433592, at *11.

In fact, as the Sixth Circuit in *International Insurance* held, it would be sensible to apply the law where the tort occurred so that the insured could depend on having coverage for whatever liability was imposed within that particular state. 86 F.3d at 607. Because Kentucky law governed the determination of liability in tort in this matter, the parties could justifiably expect that Kentucky law would also apply to interpretation of this contract. Thus, this factor also brings no strong interest on the part of Illinois.

### C.  Location of the contract

In a breach of contract action, "[t]he place where the parties negotiate and agree on the terms of their contract is a significant contact."  RST § 188 cmt. e.  The Lexington contract was both signed and negotiated in Illinois.  *See* RST §§ 188(2)(a)-(b).  But here, the named insured and signatory to the contract, Atlas, is not a party to this dispute.  Atlas has no interest in the dispute between Unarco and Lexington; it did not file briefs on the summary judgment motion and does not take a position in the choice of law debate.  In *Mills Pride*, the Sixth Circuit emphasized the place of the negotiation and business of the parties.  300 F.3d at 708-09.  Lexington uses this case to argue that the state with the most contact with the contract's creation, Illinois, has a stronger interest in the contract.  But *Mills Pride* rests upon Michigan's application of *lex loci contractus*, which construes a contract according to the law of the place where it was entered.  *Id.* at 705.  Kentucky has abandoned the *lex loci contractus* rule.  *Breeding*, 633 S.W.2d at 719 (explaining Kentucky's abrogation of the *lex loci contractus* rule in favor of the most significant relationship test).  *Mills Pride* is distinguishable for that reason.  Thus while the place of contracting—Illinois—is a factor in the analysis, it has less weight here than it did in *Mills Pride* under Michigan law.

Additionally, Lexington argues that the state with the most significant relationship to the transaction and the parties is "typically the state of the named insured, regardless of where the injury occurs."  *Cincinnati Ins. Co. v. Crossman Cmtys. P'ship*, No. 05-470, 2008 WL 852133, at *2 (E.D. Ky. Mar. 20, 2008) (citing *Lewis v. Am. Family Ins. Group*, 555 S.W.2d 579 (Ky. 1979)); *St. Paul Fire & Marine Ins. Co v. Acceptance Ins. Co.*, No. 98-6242, 1999 WL 1073669,

at *2 (6th Cir. Nov. 15, 1999) (also considering that "the insurance contract in this case was entered into in North Carolina" when deciding to apply North Carolina law). In *Cincinnati Insurance Company*, for example, the named insured was an Indiana corporation and the policy was negotiated and signed in Indiana; even though the injury and the claimants were located in Kentucky the court applied Indiana law because "Indiana has the most significant relationship to the policy transaction." 2008 WL 852133, at *2. Similarly, in *Revco D.S., Inc. v. Gov't Employees Ins. Co.*, 791 F. Supp. 1254, 1263 (N.D. Ohio 1991), the controversy and underlying lawsuits took place in Texas but the court concluded that "Ohio has a strong interest in a dispute regarding insurance coverage of one of its insureds" and applied Ohio law. But here, Unarco is not the named insured and is not an Illinois resident. The named insured, Atlas, is no longer before this Court. Therefore, the location of the contract does not determine the choice of law question in this case.

### D. Policy interests

Illinois does have a policy interest in the Lexington contract in protecting its insured corporations and in turn, encouraging insurance companies to do business in Illinois. RST § 6(2)(c) ("[T]he relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"). Lexington's policy with Atlas is a special type of insurance contract exempt from certain provisions of the Illinois Insurance Code; thus, Lexington argues that Illinois has demonstrated a policy interest in "administering, maintaining, and continuing to regulate [this] coverage issued to its residents." R. 794 at 25 (citations omitted). But Illinois' interest in protecting in-state corporations does not extend to the dispute between

14

Lexington and Unarco, neither of which is an Illinois corporation. Illinois' interest in regulating its specialized contracts, even when issued to out-of-state corporations, is a valid interest in the application of Illinois law.

### E. Remaining considerations do not apply

The remaining Restatement factors do nothing to demonstrate an overwhelming Illinois interest because they are inapplicable or indeterminate under these facts. *Int'l Ins.*, 86 F.3d at 606.

Because of Atlas's nationwide business, factor § 188(2)(c), the place of performance of the insurance contract, like the principal location of the risk, does not point to any state in particular. The same goes for the location of the subject matter of the contract, § 188(2)(d), and the domicile and residence of the parties, § 188(2)(e), which are Delaware and Tennessee. Several of the § 6 factors also offer little guidance in this case. Courts consider the basic policies underlying contract law, § 6(2)(e), including the "[p]rotection of the justified expectations of the parties," § 188 cmt. b, already discussed. The ease in the determination and applicability of the law to be applied belongs on the margins of weighing the overall factors. § 6(2)(g); § 6 cmt. j ("This policy should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results.").

Along with § 188, Kentucky courts look to § 193 for the interpretation of insurance contracts to supplement the § 188 analysis. *See State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33, 42 (Ky. 2004); *Lewis*, 555 S.W.2d at 582. Under § 193, "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law

of the state which the parties understood was to be the principal location of the **insured risk** during the term of the policy . . . ." But the commentary to § 193 acknowledges that, as is the case here, "[t]here may be no principal location of the insured risk in the case of contracts for the insurance of things, such as ships, trucks, airplanes and railroad cars, that are constantly on the move from state to state." § 193 cmt. a; *see Int'l Ins.*, 86 F.3d at 605-06 (holding that § 193 did not apply to an insurance contract for a forklift manufacturing company that sells forklifts all over the United States because the principal location of the risk could not be determined).

When the principal location cannot be determined, the "law governing insurance contracts of this [] sort must be determined in accordance with the principles set forth in the rule of § 188." § 193 cmt. b. The § 188 factors, of course, have already been discussed and reveal no overwhelming interest for Illinois. Thus, we return to Kentucky's presumption in favor of applying Kentucky law. "Kentucky courts have apparently applied Kentucky substantive law *whenever possible* . . . Kentucky law will apply to a contract issue if there are sufficient contacts and no overwhelming interests to the contrary." *Harris Corp.*, 712 F.2d at 1071 (citing *Breeding*, 633 S.W.2d at 719).

Kentucky has contacts to this dispute and Illinois' interest is not overwhelming enough to displace the presumption of applying Kentucky law. Thus, Kentucky law applies.

### Conclusion

For the foregoing reasons, Kentucky law must apply. None of the Restatement factors demonstrate an overwhelming interest in applying Illinois law. Though Kentucky also lacks a

particularly strong interest in this case, without Atlas, Illinois lacks a significant relationship to the transaction and the parties to overcome the presumption in favor of Kentucky law.

Illinois has a limited interest in regulating insurance contracts issued in Illinois and written to comply with Illinois law. Although the contract was written, negotiated, and executed in Illinois, Unarco was not a party to the original transaction and Atlas, the signatory to the contract, is not involved in this dispute. Next, the parties' intent reveals no reason to apply Illinois law. Lexington knew Atlas performed work in different states and if it wanted Illinois law to apply, it should have solidified its intent by including a choice of law provision. Finally, uniformity and consistency cut in favor of applying Kentucky law, since its tort law was applied to the underlying conflict and the insured was doing work in Kentucky. Therefore, without an overwhelming interest on Illinois' behalf, Kentucky's preference for its own law applies to Unarco's claims under the Lexington insurance policy.

This the 28th day of July, 2010.

Signed By:

_Amul R. Thapar_  AT

**United States District Judge**