# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# LONDON

| | |
|---|---|
| WILLIAM H. ASHER, et al., | ) |
| Plaintiffs, | ) Civil Action No. 06-548-ART |
| v. | ) |
| | ) **MEMORANDUM OPINION &** |
| UNARCO MATERIAL HANDLING, INC., et al., | ) **ORDER** |
| Defendants. | ) |
| v. | ) |
| LEXINGTON INSURANCE CO., | ) |
| Intervening Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This is a dispute over obligations—was Lexington Insurance Co., the liability insurer of Atlas Material Handling, Inc., obligated to defend and indemnify Unarco Material Handling, Inc., in the underlying *Asher* litigation? Unarco contends that, as an additional insured to Atlas, Lexington owed it certain duties under the Atlas/Lexington insurance policy. In Lexington's view, Unarco does not even qualify as an additional insured. Lexington is wrong.

## BACKGROUND

The facts of this case are well-established. *See Asher v. Unarco Material Handling, Inc.*, No. 06-548-ART, 2010 WL 3119281 (E.D. Ky. July 28, 2010). Briefly, in October 2005, Wal-Mart hired Unarco to repair, replace, and install storage racks at its London, Kentucky Distribution Center. R. 820, Attach. 1 at 2. Unarco, in turn, subcontracted the work to Atlas,

a company providing, among other things, rack repair services. *Id*. Atlas next subcontracted the installation work to Rack Conveyor Installations, Inc. ("RCI").

On October 31, Unarco faxed Atlas a Proposal and Subcontract, along with a Purchase Order. R. 821, Attach. 5. That fax informed Atlas that all insurance needed to be up-to-date and on file with Unarco before work could begin. It also instructed Atlas to verify that Unarco had Atlas's most recent insurance certificate. *Id*. According to Lexington, no other discussions of insurance took place until after the *Asher* injuries. R. 821, Attach. 7 at 10.

Work at the facility began on November 29, 2005, and ended on December 12, 2005, when Wal-Mart realized its employees were suffering severe symptoms from exposure to dangerous and harmful conditions inside the building where the work was being performed. R. 1, Attach. 2 at 9. The plaintiffs, Wal-Mart employees, filed suit against Unarco and Atlas in November 2006. R. 1, Attach. 1. Atlas next filed a third-party complaint against RCI, R. 24, and Unarco filed cross-claims against Atlas and RCI, R. 67. In November 2008, the parties reached a settlement after six weeks of trial.

Following the settlement, Unarco filed an intervening complaint against Atlas's insurer, Lexington, for breach of contract, common law bad faith, and violation of the Unfair Claims Settlement Practices Act. R. 737. In October 2009, Unarco moved for summary judgment on these claims. The Court dismissed Unarco's motion without prejudice until it could resolve a choice of law issue, ultimately determining that Kentucky law applied to this dispute. R. 814. The parties agreed to postpone discovery on the claims involving bad faith and the Unfair Claims Settlement Practices Act until after the Court resolved the liability questions. Unarco now

renews its motion for partial summary judgment against Lexington, R. 820, and Lexington, likewise, moves for summary judgment, R. 821. Unarco maintains it qualified as an additional insured under the Atlas/Lexington insurance policy and that Lexington therefore owed Unarco a defense and coverage under the policy. Lexington disputes this contention. For the following reasons, Unarco is entitled to summary judgment on its claim that it was entitled to a defense as an additional insured under the Atlas/Lexington policy. Because Unarco fails to develop its argument that it is entitled to indemnification directly from Lexington, its motion for summary judgment on that issue is denied. Finally, the Court declines to consider at this time Unarco's claim that it is entitled to all damages flowing from the breach of Lexington's duty to defend.

**STANDARD**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). For the defendants to prevail, they must demonstrate that no reasonable jury could find for the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The plaintiff, in turn, must provide sufficient evidence for "reasonable jurors [to] find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id*.

The Court previously determined that Kentucky law should apply to the claims. R. 814. Under Kentucky law, the interpretation and construction of an insurance contract is a question

3

of law for the court unless factual disputes exist. *See Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002) (citations omitted); *see also Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (observing that insurance contract provisions are questions of law unless there are factual disputes under Kentucky law). The insured has the burden of demonstrating coverage under an insurance contract. *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 878 (Ky. 2006). Also, the plain and ordinary meaning of terms in insurance policies controls when those words are clear and unambiguous. *Nationwide Mut. Ins. Co. v. Nolen*, 10 S.W.3d 129, 131 (Ky. 1999). But when those words prove to be ambiguous and it was the insurer who drafted the policy, ambiguities must be resolved in favor of the insured. *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992).

Here, Unarco satisfies that burden and demonstrates that its liability arose out of Atlas's work. Lexington does not dispute that it failed to defend Unarco in the *Asher* litigation. Thus, summary judgment is appropriate for Unarco on its claim that Lexington breached its duty to defend.

## DISCUSSION

Any obligations that Lexington owes Unarco flow from the Atlas/Lexington insurance policy. The relevant portions of this document are Endorsement Nos. 011 and 012.[1] Specifically, Endorsement No. 011 provides: "Who Is An Insured is amended to include any

---

[1] Endorsement No. 012 is very similar to Endorsement No. 011. It provides: "Notwithstanding any other provision of the policy to the contrary, the insurance afforded by this policy for the benefit of the additional insured shall be the primary insurance, but only with respect to any claim, loss, or liability *arising out of the Named Insured's operations*; and any insurance maintained by the Additional Insured shall be non-contributing." R. 820, Attach. 8 at 31 (emphasis added).

person or organization you [Atlas] are *required to include* as an additional insured on this policy by a written contract or written agreement in effect during this policy period and *executed prior to the 'occurrence'* of the 'bodily injury' or 'property damage'." R. 820, Attach. 8 at 30 (emphasis added). The policy goes on to limit the additional insured's coverage to liability "arising out of 'your [Atlas's] work' or 'your [Atlas's] product'." *Id*.

Unarco argues this provision is a "blanket additional insured endorsement." R. 823 at 5. A blanket endorsement is a contract requiring one party to obtain insurance covering the other party—even if the other party is not named. *BP Chems., Inc. v. First State Ins. Co.*, 226 F.3d 420, 425 (6th Cir. 2000). This Court previously found that Atlas never actually included Unarco as a named additional insured. *See* R. 814.

Thus, for Unarco to claim coverage under the Atlas/Lexington policy, it must satisfy three requirements under the contract. R. 820, Attach. 8 at 30. First, Unarco must point to a *separate* written contract between Atlas and Unarco requiring Atlas to include Unarco as an additional insured. Second, Unarco must show that the parties executed the contract "prior to the occurrence" of events giving rise to the *Asher* litigation. And finally, Unarco must show that the claims against it arose out of Atlas's work. Unarco identifies three primary documents creating additional insured status: (1) the Atlas/Unarco Subcontract, (2) the Atlas/Unarco Purchase Order, and (3) the Supplementary Payments section of the Atlas/Lexington policy. Lexington disputes Unarco's reliance on each of these documents.

**The Atlas/Unarco Subcontract**

On October 31, prior to the start of work at the Wal-Mart Distribution Center, employees

5

of Atlas and Unarco exchanged a series of faxes. R. 820, Attach. 4; R. 821, Attach. 5. Specifically, Unarco's Angie Pfeffer faxed Atlas's David Oronato the following documents: a Proposal and Subcontract, Supplementary Terms and Conditions, a Project Completion Sign-Off Sheet, and a Purchase Order. R. 821, Attach. 5. Oronato signed the applicable documents and returned them to Pfeffer. R. 820, Attach. 4. While some dispute exists as to whether the Purchase Order Terms and Conditions were sent with the Purchase Order, no one disputes that the Subcontract's Supplementary Terms and Conditions were sent on October 31—prior to the occurrence of the *Asher* injuries.

The Subcontract itself is brief. The introductory paragraph explains that the Subcontract is subject to the attached Supplementary Terms and Conditions. R. 821, Attach. 5 at 6. The very first term and condition, Supplementary Term and Condition No. 1, states: "Installer agrees to be bound by the terms and conditions of the contract which Unarco Material Handling, Inc. proposes to enter into, or has entered into, with the General Contractor, or Owner, and the documents referred to therein, as far as applicable to the work covered hereby, and **agrees to assume toward Unarco all obligations and responsibilities that Unarco assumes toward the General Contractor, or Owner [Wal-Mart]**, which said contract and the documents referred to therein are made a part hereof." *Id*. at 3 (emphasis added). This provision requires Atlas to assume toward Unarco any obligations that Unarco Assumes toward Wal-Mart. So what obligations did Unarco assume toward Wal-Mart? Unarco assumed a number of obligations, but most relevant for this issue is the requirement that Unarco name Wal-Mart as an additional insured in all insurance policies. R. 820, Attach. 2 at ¶ 16. Thus, under the Atlas/Unarco

contract, in order to assume the responsibilities toward Unarco that Unarco assumed toward Wal-Mart, Atlas was required to name Unarco as an additional insured.

Lexington lodges several unconvincing challenges to Unarco's reliance on the Subcontract Supplementary Terms and Conditions. First, Lexington disputes that the requirement that Unarco name Wal-Mart as an additional insured implies that Atlas must then name Unarco. R. 829 at 9. The Supplementary Terms and Conditions between Atlas and Unarco incorporate the contract between Unarco and Wal-Mart. Kentucky law permits the incorporation of terms from a first contract into a second contract, making the terms of the first contract enforceable against a party to the second contract. *Prime Contracting, Inc. v. Wal-Mart Stores, Inc.*, No. 06-383, 2008 WL 2859014, at *2 (E.D. Ky. July 22, 2008) (citing *Buck Run Baptist Church, Inc. v. Cumberland Surety Ins. Co., Inc.*, 983 S.W.2d 501 (Ky. 1998)). In *Buck Run Baptist Church, Inc.*, the Kentucky Supreme Court enforced an arbitration provision between Buck Run and Cumberland Surety. Because "[t]he Cumberland Surety performance bond clearly and specifically incorporated by reference the construction contract between Buck Run and [the general contractor,] . . .if the arbitration provisions of that contract are otherwise enforceable, they are binding on Buck Run. Cumberland, in effect, stood in the shoes of [the general contractor] and became the contractor on the project." 983 S.W.2d at 503; *see also Home Lumber Co. v. Appalachian Reg'l Hosps., Inc.*, 722 S.W.2d 912 (Ky. Ct. App. 1987) (holding that a prime construction contract requiring arbitration could be incorporated by reference into a purchase order contract but that a question of fact existed as to whether it was in fact incorporated). While there is not a plethora of Kentucky case law on the doctrine of

incorporation by reference except in the context of insurance contracts, *see Insight Commc'ns Co., Inc. v. Telecomms. Bd. of N.Ky.*, No. 05-142, 2006 WL 208828, at *5 (E.D. Ky. Jan. 25, 2006), Kentucky nevertheless recognizes the doctrine when clear language expresses the incorporation of other terms. *Cf. Bartelt Aviation, Inc. v. Dry Lake Coal Co., Inc.*, 682 S.W.2d 796, 797 (Ky. Ct. App. 1985). Such was the case here.

Lexington also argues that since Atlas's David Oronato, who signed the Subcontract, was not provided a copy of the Wal-Mart contract, Unarco should not be permitted to rely on the Subcontract for additional insured status. R. 829 at 9-10. In his deposition Oronato says he never saw the Wal-Mart contract and that he never would have agreed to something he did not have the opportunity to review. R. 477 at 46-50. But Oronato's testimony calls into question whether he even read *any* part of the Subcontract's Supplementary Terms and Conditions. He admitted that he "skimmed" the document and that he did not understand the terms of the first paragraph. *Id*. at 49-50. Failing to read a document—especially when the parties are sophisticated, as these are—is no excuse. *Grisby v. Mountain Valley Ins. Agency, Inc.*, 795 S.W.2d 372, 374 (Ky. 1990) ("[T]he insured's failure to read and comprehend the policy has no legal effect: it may not serve as a sword for the insured nor as a shield for the agency."). The provision at issue appeared at the very top of a two-page document. In fact, the very first sentence incorporated the Wal-Mart contract. Oronato's failure to read the document does not change the fact that Unarco and Atlas were sophisticated entities entering into a significant business deal. *Fite & Warmath Constr. Co., Inc. v. MYS Corp.*, 559 S.W.2d 729, 735 (Ky. 1977) (discussing an agreement voluntarily entered into by sophisticated and knowledgeable

8

businessmen concerning a financial transaction of considerable magnitude and thus holding that neither party was free to repudiate his promise). In the end, Lexington fails to cite any case law or explain why Oronato's failure to read the Unarco/Wal-Mart contract could be a problem under Kentucky law. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Finally, Lexington argues Unarco should not be permitted to rely on this argument because it did not refer to the Wal-Mart contract in its interrogatories or any time before its renewed motion for summary judgment. R. 829 at 8 n.2. But Unarco did inform Lexington that it intended to rely on the Subcontract in its second set of interrogatories and paragraph 1 of the Subcontract's Supplementary Terms and Conditions incorporates the Wal-Mart contract. Therefore, Lexington should have been on notice that Unarco intended to make this argument.

Thus, under the Atlas/Unarco Subcontract, in order to assume the responsibilities toward Unarco that Unarco assumes toward Wal-Mart, Atlas must name Unarco as an additional insured.

**The Atlas/Unarco Purchase Order and the Supplementary Payments Provision**

Because Unarco qualifies as an additional insured under the Subcontract Supplementary Terms and Conditions, there is no need to address the other documents under which Unarco claims additional insured status—the Purchase Order Terms and Conditions or the Supplementary Payments provision in the Atlas/Lexington policy. Therefore, the Court need not reach questions associated with the affidavit of Ann Cherry submitted by Unarco. R. 820,

Attach. 22. Lexington's motion to strike this affidavit, R. 825, is denied as moot.

**"Arising Out Of"**

Under the Atlas/Lexington policy, Lexington is only required to defend an additional insured against claims that arise "out of '[Atlas's] work' or '[Atlas's] product'." R. 820, Attach. 8 at 3. The parties dispute whether, as a matter of law, the *Asher* incident arose out of Atlas's work or operations. Thus, it is critical to determine how Kentucky courts have interpreted the phrase "arising out of." While Kentucky case law is limited, those courts that have interpreted this phrase have read it expansively. Applying Kentucky law to this case, Unarco's liability arose out of Atlas's work.

In determining whether Lexington had an obligation to defend Unarco, the starting point is the complaint. Insurers have an obligation to defend if the complaint contains any allegation "which potentially, possibly or might come within the coverage of the policy." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001) (quoting *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)) (citing *O'Bannon v. Aetna Cas. and Sur. Co.*, 678 S.W.2d 390 (Ky. 1984)). The insurance company must decide at the outset of the litigation whether or not a defense is required. *Brown Found.*, 814 S.W.2d at 279 (citing *Knapp v. Chevron USA, Inc.*, 781 F.2d 1123 (5th Cir.1986)). An insurer who believes coverage is unwarranted may choose to defend the party anyway and preserve its rights to challenge the coverage at a later date through a reservation-of-rights letter. *Aetna Cas. & Sur. v. Kentucky*, 179 S.W.3d 830, 841 (Ky. 2005). But if the insurer elects not to defend the party and it turns out the insurer should have done so, the insurer will be liable for

"all damages naturally flowing from" the failure to provide a defense. *Id*. (quoting *Eskridge v. Educator and Executive Insurers, Inc.*, 677 S.W.2d 887 (Ky. 1984)). Lexington did not elect to reserve its rights and chose not to defend Unarco.

So what did the complaint allege? Throughout the complaint, the plaintiffs repeatedly refer to the "Defendants," meaning Unarco and Atlas. The plaintiffs single out Unarco for failing to exercise due care in initiating and maintaining safety programs and precautions. R. 1, Attach. 2 at 13. They allege Unarco failed to evaluate and monitor the personnel on the job, including Atlas. They then claim that Atlas also failed to supervise the work to ensure it was safely performed and failed to initiate, maintain, or supervise any safety plan for the performance of the work. *Id*. at 14. But then the complaint proceeds to lump the actions of the two defendants together. It alleges that the "Defendants" failed to make any provisions for monitoring the level of carbon monoxide in the building. *Id*. at 15. The "Defendants" also failed to read and/or abide by the manufacturers' safety manuals and instructions for the proper operation of the generators and equipment. And the Defendants operated the generators inside the building rather than outside as required for safe operation. *Id*. Based on the complaint, it is difficult if not impossible to say where the allegations against one defendant end and the other begin. What is clear is that Unarco hired Atlas to do the work, and the allegations against Unarco in the complaint resulted from that work.

But did the allegations in the complaint concern the type of claims "potentially" or "possibly" covered by the Atlas/Lexington policy, thus triggering Lexington's obligation to defend Unarco? *Lenning*, 260 F.3d at 581. In this case, that means determining if Unarco's

11

liability arose out of the rack repair work Unarco hired Atlas to perform. This, in turn, requires interpreting the phrase "arising out of" under Kentucky law. "The Sixth Circuit has determined that under Kentucky law [the words] 'arising out of use of' in an automobile insurance policy are broad, general, and comprehensive terms meaning 'originating from,' or 'having origin in,' 'growing out of' or 'flowing from.'" *State Farm Mut. Auto. Ins. Co. v. Kentucky School Bd. Ins. Trust*, 851 F. Supp. 835, 837 (E.D. Ky.1994) (quoting *Ins. Co. of North Am. v. Royal Indem. Co.*, 429 F.2d 1014, 1017 (6th Cir. 1970)); *Burlington Ins. Co. v. Progressive Northern Ins. Co.*, No. 07-371, 2008 WL 5192220, at *3 (E.D. Ky. Dec. 11, 2008). "All that is required to come within the meaning of the words 'arising out of the . . . use of the automobile' is a causal connection with the accident." *Royal Indem.*, 429 F. 2d at 1018. While these cases discuss the phrase as used in the automobile insurance context, it appears this meaning extends beyond that context. In *Secura Ins. Co. v. Gorsick*, No. 3:06CV-596R, 2008 WL 341383, at *6-7 (W.D. Ky. Feb. 6, 2008), the court relied on the expansive interpretation of "arising out of" in a non-automobile context—all that was needed was a "causal connection."

Here, a causal connection exists between the claims asserted against Unarco and Atlas's "work." The Atlas/Lexington policy defines "your work" as "(1) Work or operations maintained by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." R. 820, Attach. 7 at 27. It includes the "providing of or failure to provide warnings or instructions." *Id*. Unarco hired Atlas to perform the rack repair and installation work at the Wal-Mart Distribution Center. The actual scope of the work as defined by the Subcontract states that Atlas shall "install kits, remove post protectors and re-weld

diagonal frames" with "[I]nstallation to begin 11/14/05." That "work" resulted in the *Asher* plaintiffs' injuries. While Atlas ultimately subcontracted the work to RCI, it was the work performed "on [Atlas's] behalf" that underlay the claims in the complaint—the misuse of the generators.

Lexington argues that a recent Sixth Circuit opinion, *Asher v. RCI*, 375 F. App'x 576 (6th Cir. 2010), suggests that Unarco's conduct may have contributed to the underlying defendants' liability to the Asher plaintiffs. R. 821, Attach. 1 at 20. In *Asher v. RCI*, the court discussed how Unarco provided the materials for the work, including the repair kits and the drawings for the repairs. Unarco and Lexington dispute whether the court concluded that RCI or Unarco rented the generators that caused the injuries. R. 821, Attach. 1 at 20-21; R. 823 at 23. The court stated: "RCI admits that Unarco supplied the rack repair kits. RCI also concedes that it maintained a list of standard tools and equipment for use during rack repair work, and it independently selected and provided its crew with the hand and power tools, welding equipment, and rented generators needed for the job." *Asher*, 375 F. App'x at 582. Who is "it"? Regardless of who "it" is, Unarco hired Atlas to do the work and that work—using the generators in an unsafe manner—caused the injuries.

Kentucky case law on the phrase "arising out of" outside of the automobile insurance context is, unfortunately, limited. Unarco points the Court toward *Johnson v. Service Merchandise Company*, 327 F. Supp. 2d 735 (E.D. Ky. 2004), for one example of a court interpreting the phrase "arising out of your work" under Kentucky law in the insurance context. But the court there was more focused on the phrase "your work"—not "arising out of." The case

13

involved a plaintiff who tripped over a mat in a retail store and sued the store owner. The store contracted with the mat supplier to be an additional insured under the supplier's policy, but the supplier had not named the store as such. The question was whether the policy protected the store owner for its own negligence. The court found the phrase "your work" to be ambiguous and applied the Kentucky doctrine of reasonable expectations. *Id*. at 737. It concluded that both the named insured and the additional insured had the reasonable expectation that the additional insured was protected by the insurance policy. *Id*.

Unlike *Johnson*, the Court here need not look to the Kentucky doctrine of reasonable expectations. The phrases "arising out of" and "your work" as used here are not ambiguous such that reliance on that doctrine is needed. Moreover, to the extent those phrases are ambiguous, ambiguities must be resolved in favor of the insured—in this case Unarco. *McKinney*, 831 S.W.2d at 166.

Lexington would instead have the Court rely on *Toledo Edison Co. v. ABC Supply Co.*, 46 F. App'x 757 (6th Cir. 2002). There, the Sixth Circuit applied Ohio law in interpreting the phrase "arising out of" to find that coverage was precluded for an additional insured's independent negligence. That case involved an individual injured by a power line who brought suit against a tree trimmer and the power company. The court relied on the Ohio case, *Davis v. LTV Steel Co.*, 716 N.E.2d 766 (Ohio 1998), in concluding that the tree trimmer's insurance policy, which named the power company as an additional insured, protected the power company only against claims of vicarious liability for the tree trimmer's negligence. Under Ohio law, phrases such as "arising out of" are meant to insure a general contractor only against claims of

14

vicarious liability for a subcontractor's negligence. The *Toledo* court recognized a more recent Ohio case, *Stickovich v. City of Cleveland*, 757 N.E.2d 50 (2001), that suggested the phrase "arising out of" in additional insured provisions should be read very broadly but concluded that that portion of the *Stickovich* opinion was only dicta and that the complaint in that case alleged negligence that clearly arose out of the operations of the subcontractor. *Toledo Edison*, 46 F. App'x at 763 n.6. And the jury verdict in *Toledo* appeared to find the power company liable for its own negligence in failing to maintain power lines—the verdict was not based on the acts of the tree trimmer.

None of the Kentucky cases cited by the parties limit the phrase "arising out of" to claims of vicarious liability. Thus, the fact that this Court previously held that the plaintiffs *did not* adequately plead vicarious liability claims does not preclude a finding that Unarco's liability arose out of Atlas's work. *See* R. 462 at 4. Also, any argument that the policy was only intended to cover Unarco for claims of vicarious liability is contrary to the rule in Kentucky that "[a]ny limitation on coverage or an exclusion in a policy must be clearly stated in order to apprise the insured of such limitations." *Anderson v. Kentucky Growers Ins. Co.*, 105 S.W.3d 462 (Ky. Ct. App. 2003) (quoting *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward*, 870 S.W.2d 223, 227 (Ky. 1994). Lexington did not so limit its policy.

Lexington next argues that because Unarco claimed in previous proceedings before this Court that its liability arose out of its *direct* obligations to the *Asher* plaintiffs, Unarco should not be permitted to argue that the claims against it arose out of Atlas's work. R. 821, Attach. 1 at 19. But what the parties argued and what the complaint alleged are two different matters.

15

And courts look to the allegations in the complaint in determining whether an insurer has a duty to defend based on the policy. *Simpsonville Wrecker Serv., Inc. v. Empire Fire and Marine Ins. Co.*, 793 S.W.2d 825, 830 (Ky. Ct. App. 1989).

Lexington, nevertheless, is correct that the phrase "arising out of" is not without limitation. R. 821, Attach. 1 at 34. In *James River Ins. Co.v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 386-87 (7th Cir. 2009), the court commented that "arising out of" in the additional insured context implies a tighter connection than mere "but for" causation. *Id*. at 386. As Judge Posner put it, "Maybe if Columbus hadn't discovered America the federal courts of appeals would not have been created in 1891; but it would be odd to say that the federal appellate judiciary 'arose from' Columbus's voyages." *Id*. Here, concluding that Unarco's liability arose from Atlas's work does not require an intellectual stretch in the same way as concluding the federal courts "arose from" Columbus's discovery.

Because Unarco qualifies as an additional insured with respect to liability arising out of work or operations performed by Atlas or on Atlas's behalf, Lexington breached its duty to defend Unarco.

**Coverage**

Unarco claims it is entitled to all damages—defense and settlement costs—resulting from Lexington's breach of the duty to defend. R. 820, Attach. 1 at 38. The Court declines to consider that argument at this time in order to give both parties a full and fair opportunity to respond. Those arguments should be dealt with in the next round of briefing to the Court. However, to the extent Unarco makes an independent argument for coverage or indemnification

16

directly from Lexington, the Court considers that argument waived. The Court is unable to find where in Unarco's briefs it develops that argument, and the Court will not construct an argument for it.

## CONCLUSION

Unarco satisfies its burden that it qualifies as an additional insured under the Atlas/Lexington policy and that the claims against it arose out of Atlas's work. As an additional insured, Lexington owed Unarco a defense. By not providing one, Lexington breached that duty.

Accordingly, it is **ORDERED** that:

(1) Unarco's motion for partial summary judgment, R. 820, is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** with respect to Unarco's claim for breach of contract as it pertains to Lexington's duty to provide a defense. The motion is **DENIED** with respect to Unarco's claim for indemnity.

(2) Unarco's motion for summary judgment on its claims for damages flowing from the breach of the duty to defend, R. 820, are **DENIED WITHOUT PREJUDICE**;

(3) Lexington's motion for summary judgment, R. 821, is **DENIED**;

(4) Lexington's motion to strike the affidavit of Ann Cherry, R. 825, is **DENIED AS MOOT**.

This 6th day of January, 2011.



Signed By:
*Amul R. Thapar*
United States District Judge