UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| WILLIAM H. ASHER, et al., | ) |
| Plaintiffs, | ) Civil No. 06-548-ART |
| v. | ) |
| UNARCO MATERIAL HANDLING, INC., et al., | ) **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) |
| v. | ) |
| LEXINGTON INSURANCE CO., | ) |
| Intervening Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Having already concluded that Unarco Material Handling, Inc., qualified as an additional insured entitled to a defense under Lexington Insurance Co.'s insurance policy with Atlas Material Handling, Inc., the only question remaining is whether Unarco is also entitled to coverage under the Lexington policy. It is.

## BACKGROUND

In 2005, Wal-Mart hired Unarco to repair, replace, and install storage racks at its London, Kentucky, distribution center. R. 820-1 at 2. Unarco next subcontracted the work to Atlas, a company providing rack repair services. *Id*. Atlas, in turn, subcontracted the installation work to Rack Conveyor Installations, Inc. Between November 29, 2005, and December 12, 2005, a number of Wal-Mart employees

working at the center suffered carbon monoxide-related injuries as a result of the on going repair work. R. 1-2 at 9, 10. The Wal-Mart employees—the *Asher* plaintiffs—filed suit against Unarco and Atlas in November 2006 and settled with them in late 2008. R. 1-1. After the *Asher* plaintiffs filed their complaint and before settlement, Unarco demanded that Atlas's insurance company, Lexington, provide it a defense and indemnity for the claims asserted against it. *See* R. 737 at 4. When Lexington did not do so, Unarco filed an intervening complaint against Lexington for breach of contract, common law bad faith, and violation of the Unfair Claims Settlement Practices Act. *Id*.

This Court previously held that Lexington owed Unarco a duty to defend it in the underlying *Asher* litigation, R. 835, but that Unarco waived its coverage argument against Lexington. R. 835. The Court has since reconsidered this holding for the reasons set forth in its Order dated March 23, 2011. R. 851. Briefly, the structure of Unarco's motion and its responses to questions during oral argument led the Court to conclude it waived that argument. Where, the Court asked, did Unarco develop its coverage argument? Unarco could not point to a single section of its brief, as it chose not to devote a separate section to this argument. It instead incorporated this argument into the discussion of its status as an additional insured and its entitlement to a defense, leaving the Court to sift through the pieces of the jigsaw puzzle Unarco created. At oral argument, Unarco suggested its failure to properly brief this issue was beside the point since Lexington had never argued it had a defense to coverage. R. 839 at 50-51. This Court declines Unarco's request to swap the burdens for placing coverage at issue—the burden is Unarco's. In fairness, Unarco's request for

reconsideration more clearly set forth its coverage argument. And its latest brief, uncharacteristically and surprisingly punctuated with points in bold and all capitals, (finally) places the coverage argument squarely in front of the Court. While the Court sympathizes with Lexington, who like the Court has had to try to construct the puzzle in order to respond, the law and facts compel the conclusion that Unarco is entitled to coverage.

## DISCUSSION

The duty to defend and the duty to indemnify are not one in the same. *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984) ("The obligation to defend the insured is set out in the insurance contract and is separate from the duty to provide coverage and to pay."). Kentucky courts are clear that the duty to defend is broader than the duty to indemnify. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279-80 (Ky. 1991). Indeed, an insurer has a duty to defend if allegations are made which "potentially, possibly or might come within the coverage of the policy." *Id.* at 279 (citing *O'Bannon v. Aetna Cas. & Sur. Co.*, 678 S.W.2d 390, 392 (Ky. 1984)). Here, the defense question has been settled: Lexington owed Unarco a defense. That Lexington owed a defense does not necessarily mean it owed coverage. That being said, Unarco has shown that it satisfies the policy requirements and is therefore entitled to coverage.

***The Policy***. First, turning to the language of the policy, the section labeled "Coverage A. Bodily Injury and Property Damage Liability," explains *what* the Atlas/Lexington policy covers. It reads: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property

3

damage' to which this insurance applies." R. 821-15 at 6. Also, "[t]he 'bodily injury' or 'property damage'" must be "caused by an 'occurrence' that takes place in the 'coverage territory.'" *Id*. Next, Endorsement No. 011 to the Atlas/Lexington policy defines *who* is an insured. It includes any person or organization that Atlas is required to include as an additional insured on the policy by a written contract or agreement executed before the "occurrence" of the "bodily injury" or "property damage." R. 821-16 at 22. The Endorsement continues by noting that the "person or organization is only an additional insured with respect to liability arising out of 'your work' or 'your product.'" *Id*.

*Automatic Coverage*. Unarco first contends that coverage flowed to it automatically because of Endorsement No. 011—a blanket additional insured endorsement. A number of federal courts considering similar policy language have concluded that when a contract requires a party to obtain insurance covering another party, a blanket additional insured endorsement *automatically* provides liability coverage—even if the additional insured is not named. R. 852 at 2; *see Woods v. Dravo Basic Materials Co., Inc.*, 887 F.2d 618, 622 (5th Cir. 1989) (blanket additional insured clause provided coverage to extent coverage required by agreement); *St. Paul Fire & Marine Ins. Co. v. Hanover Ins. Co.*, 187 F. Supp. 2d 584, 587 (E.D. N.C. 2000) (concluding that a blanket additional insured endorsement provides coverage even though other party not named under policy); *Travelers Indem. Co. v. Navigators Ins. Co.*, No. 99-4509, 2000 WL 630859, at *3 (N.D. Cal. May 8, 2000).

In response to Lexington's motion for summary judgment, Unarco argued that Endorsement No. 011 contained just such a blanket additional insured endorsement that would automatically provide liability coverage even though Unarco was not named in the Atlas/Lexington policy. R. 823 at 5-6. And while Lexington could have included in this blanket endorsement any number of pre-conditions for coverage, *id*. at 5, Unarco notes, it did not do so. Even so, the burden remains on Unarco to show that the blanket endorsement actually covered the claims at issue in this matter. *Id*. at 8. Unraveling this argument requires a closer look at what issues were actually in dispute between the parties.

***Placing Coverage at Issue***. Unarco's principal argument is simply that Lexington has never challenged its entitlement to coverage; Lexington only challenged Unarco's status as an additional insured. R. 823 at 12 ("Lexington's sole defense to date has been that Unarco does not qualify as an additional insured under its policy, and not that there are any coverage defenses that would preclude Unarco's right to coverage if it were determined that Unarco is an additional insured."). This Court previously concluded Unarco qualified as an additional insured under the policy. Thus, the argument goes, the only hurdle standing between Unarco and its entitlement to coverage no longer remains.

To date, Lexington has set forth no other grounds for denying Unarco coverage. It expressly stated that it was not relying on any policy exclusions for denying coverage during the most recent round of summary judgment briefing. R. 824 at 2. Simply put, it believed that Unarco could not satisfy its threshold burden of demonstrating that it qualified as an additional insured under the policy. It did go

5

somewhat further in alleging Unarco failed to satisfy the "express terms of the Lexington primary policy." *Id*. But then it cut that argument short and did something curious: Lexington stated in a footnote that it did not intend to waive any of its affirmative defenses set forth in its Answer to Unarco's Complaint and reserved the right to assert those defenses "when appropriate." *Id*. at 2 n.1. Presumably, it was referring to the affirmative defenses on coverage listed in its Answer. R. 744 at 4-6. But it failed to articulate those defenses in its response to Unarco's motion for summary judgment.

In retrospect, one wonders if Lexington was waiting for the next round of briefing on damages to assert its affirmative defenses. That would make little sense, however, because Unarco's entitlement to coverage (or lack thereof) would need to be established before the Court could assess damages. Lexington ultimately failed to expand on this point and instead confined its argument to claiming that Unarco was not an additional insured for three reasons: (1) Unarco had not been named as an additional insured under the policy, (2) no written contract requiring that Unarco be added as an additional insured had been executed before the occurrence of the bodily injuries suffered by the *Asher* plaintiffs, and (3) Unarco's liability did not "arise out of" Atlas's work. *Id*. at 4. This Court addressed (and disagreed with) each of these arguments in its Order dated January 6, 2011. R. 835 at 5, 6, 10.

As Lexington rightly points out, irrespective of whether it directly responded to Unarco's coverage argument, Unarco still has an obligation to satisfy the policy requirements to be entitled to coverage. Although the allegations in the complaint mattered for evaluating Lexington's duty to defend Unarco, *Lenning v. Commercial*

6

*Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001), coverage is a separate question, *see Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 841 (Ky. 2005).

According to the policy's language, Lexington will cover "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." R. 821-15 at 6. The bodily injury or property damage must be caused by an "occurrence" within the "coverage territory." *Id*. Lexington has never challenged Unarco's "legal[] obligat[ion]" to pay the *Asher* plaintiffs. R. 821-15 at 6; *see Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Servs., Inc.*, No. 08-93, 2011 WL 2149352, at *1 (E.D. Ky. June 1, 2011) (where insurance company disputed insured's *actual* liability to the other party). Nor has it put the terms "bodily injury" and "coverage territory" at issue. As Unarco remarks in its most-recent brief, "[i]t would appear factually undisputed that the Asher plaintiffs alleged significant bodily injury resulting from carbon monoxide." R. 852 at 9. Indeed, even Lexington noted in its response to Unarco's motion for summary judgment that "[t]he injuries sustained by the Asher plaintiffs occurred during the work performed at the Wal-Mart facility." R. 824 at 7 n.2. These terms have not been in dispute.

As for "occurrence," that term only came into play when determining whether Unarco qualified as an additional insured based on a "written contract or agreement." R. 824 at 7. To be an additional insured, the contract requiring Atlas to include Unarco as an additional insured had to have been executed before the "occurrence" of the bodily injuries. R. 821-16 at 22. Unarco argued that any one of several documents created this right—the Purchase Order Terms and Conditions, the

7

Subcontract's Supplementary Terms and Conditions, and the Supplementary Payments section of the Atlas/Lexington policy. R. 820-1 at 14-16. A question of fact existed as to whether one of those documents, the Purchase Order Terms and Conditions, was provided to Atlas by Unarco before the "occurrence" of the *Asher* injuries. But the Court did not rely on the Purchase Order for determining Unarco's status as an additional insured—it relied on the Subcontract between Atlas and Unarco. And there was no question that Atlas received the Subcontract before the "occurrence" of the injuries. R. 835 at 6.

Unarco did use its most recent brief to elaborate on whether the *Asher* injuries could rightly be called an "occurrence," stating that it was "undisputed that Lexington's named insured Atlas did not *intend* to injure the *Asher* plaintiffs, so that their injuries would qualify as an 'occurrence' under Lexington's policy." R. 852 at 9 (emphasis added); *see James Graham Brown Found.*, 814 S.W. 2d at 278 (discussing the plaintiff's entitlement to coverage so long as there was no "specific and subjective intent to cause" the damage at issue). Unarco could have included this point in its previous briefs, but again, the terms "bodily injury" and "occurrence" were simply not at issue. And so Unarco's failure to devote attention to these terms in its briefs, while ill-advised, does not defeat its coverage argument.

Unarco included the pieces to the coverage puzzle in its motion for summary judgment but tasked the Court with putting those pieces together. It has shown that, according to the language of the policy, it is entitled to coverage from Lexington. The real question of whether Unarco will be able to show any damages remains for another day.

8

***Endorsement No. 012***.  Finally, both parties now agree that Endorsement No. 012 does not establish coverage.  Rather, this Endorsement only confirms that the coverage afforded to the additional insured under the policy shall be the *primary* insurance for any claim, loss, or liability arising out of Atlas's operations.  R. 821-16 at 23.  The Court will consider the implications of this finding and all issues relating to damages in the next round of briefing.

## CONCLUSION

Did Unarco set forth an argument that, assuming it qualified as an additional insured, it was entitled to coverage?  Yes.  Was that argument presented in a less-than-clear manner?  Yes.  Is Unarco nevertheless entitled to coverage as an additional insured under the Atlas/Lexington insurance policy?  Yes.  Resolving this issue is necessary for the Court and the parties to accurately assess the question of damages.  For this reason, and contrary to Lexington's assertion otherwise, more remains to be done than the entry of a final judgment.  *See* R. 855 at 2 n.1.

Accordingly, it is **ORDERED** that the Court's previous Order, R. 835, is **AMENDED** to reflect that Unarco's motion for summary judgment is **GRANTED** with respect to its claim for indemnity.

This the 29th day of June, 2011.



Signed By:
*Amul R. Thapar*
United States District Judge