UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

WILLIAM H. ASHER, et al.,

      Plaintiffs,

v.

UNARCO MATERIAL HANDLING,
INC., et al.,

      Defendants.

v.

LEXINGTON INSURANCE CO.,

      Intervening Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 06-548-ART

**MEMORANDUM OPINION
AND ORDER**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

The parties have settled, the plaintiffs have received compensation, and only the defendants are left. One last question remains: Is the contractor Unarco entitled to indemnification from the subcontractor Atlas? Based on the language of the applicable agreements, the answer is yes. As a result, Unarco is now entitled to summary judgment.

**BACKGROUND**

Carbon monoxide—that odorless, colorless, and *toxic* gas—could not be seen in the Wal-Mart distribution center in London, Kentucky; the employees working in the area nonetheless felt its effects. Between November and December of 2005, a number of employees claimed that they suffered injuries after being exposed to this

dangerous gas. These employees worked in and around the distribution center's freezer, which happened to be the site of on-going rack installation and repair work. Wal-Mart contracted with Unarco Material Handling, Inc., to provide and install these rack systems. Unarco, in turn, subcontracted with Atlas Material Handling, Inc., to perform the actual work. R. 843-4. And Atlas further subcontracted the work to Rack Conveyor Installation, Inc. ("RCI"). As part of this work, RCI operated at least two large generators inside the building, which emitted carbon monoxide and caused the injuries suffered by the Wal-Mart employees.

The Wal-Mart employees subsequently filed suit against Unarco and Atlas. R. 1-1. Unarco then cross-claimed against Atlas seeking contractual and common law indemnity. R. 67. While Atlas and Unarco eventually settled the claims with the Wal-Mart employees—i.e., the *Asher* plaintiffs, R. 470, R. 706—Unarco's indemnity claims against Atlas remain pending. Those claims are now ripe for consideration.

## DISCUSSION

Summary judgment is proper when no genuine issue as to any material fact exists and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, no issues of fact remain—only issues of law. And those issues must be resolved by looking to the three agreements at the heart of this dispute: (1) Unarco's General Contract with Wal-Mart, (2) Unarco's Subcontract with Atlas (including the Subcontract's Supplementary Terms and Conditions), and (3) the Purchase Orders between Atlas and Unarco with accompanying Terms and Conditions. The parties now dispute whether any of these documents entitle Unarco to indemnification from Atlas. Ultimately, the Purchase Order fits the bill.

***Previous Decisions***.   This is not the first motion for summary judgment between the parties.  Unarco previously moved for summary judgment, arguing that it owed no duties to the *Asher* plaintiffs, as it had delegated *all* duties to Atlas.  R. 249-2 at 6.  The Court denied that motion.  R. 283.  Because Unarco agreed to be "totally responsible for safety in connection with the rack repair work," it could not avoid liability.  *Id.* at 11.  Rather, it undertook complete responsibility for safety at the distribution center and did not properly delegate that duty to Atlas under the applicable contracts.  *Id.*

Unarco then moved for summary judgment on the ground that it could not be vicariously liable to the *Asher* plaintiffs because of the Court's holding that it could be directly liable.  R. 321.  The Court ultimately granted Unarco's motion on the vicarious liability claims, finding that the *Asher* plaintiffs had failed to plead vicarious liability.  R. 462 at 4.

Unarco now moves for summary judgment on its belief that Atlas must indemnify it for the amounts it has expended in the resolution of the *Asher* claims.  R. 843.  Atlas, likewise, moves for summary judgment on Unarco's claims.  R. 842.

***Choice of Law***.   Federal courts exercising diversity jurisdiction apply the choice of law rules of the forum state—in this case, Kentucky.  *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  And the Sixth Circuit has interpreted Kentucky law to apply the Restatement (Second) of Conflict of Laws § 187 for analyzing contractual choice-of-law clauses.  *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 397 (6th Cir. 2000); *Bank of N.Y. v. Janowick*, 470 F.3d 264, 270 n.3 (6th

Cir. 2006); *In re ClassicStar Mare Lease Litig.*, 735 F. Supp. 2d 707, 709 (E.D. Ky. 2010). Under this test, the court should honor the parties' choice of law unless (1) "'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,'" or (2) "'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest.'" *Wallace*, 223 F.3d at 398 (quoting Restatement (Second) of Conflict of Laws § 187 (1971)).

In this case, the law of three states is potentially controlling: Tennessee, Kentucky, and Arkansas. First up, Tennessee: Paragraph 19 of the Purchase Order Terms and Conditions states that Tennessee law shall govern the contract between Unarco and Atlas. R. 842-4 at 3. Next, Kentucky: The Atlas and Unarco Subcontract's Supplemental Terms and Conditions, however, contain no choice of law provision, meaning Kentucky law would presumably apply in the absence of another controlling provision. R. 842-3. Finally, Arkansas: The Wal-Mart/Unarco contract includes an Arkansas choice-of-law provision. R. 843-2 at 6. In the end, Tennessee law controls.

Under the first prong of the Restatement test, Tennessee clearly has a relationship with the parties. Unarco is a Tennessee corporation with which Atlas chose to do business. As for the second prong, neither party has argued that the use of Tennessee law would be contrary to a fundamental policy of Kentucky or that Kentucky has a "materially greater interest" than Tennessee in the resolution of the indemnification issue. Also, both Kentucky and Tennessee generally allow parties to construct agreements whereby a party may be indemnified against its own negligence

by another party. *Fosson v. Ashland Oil & Refining Co.*, 309 S.W.2d 176, 178 (Ky. 1958); *Amerco Mktg. Co. of Memphis v. Myers*, 494 F.2d 904, 913-14 (6th Cir. 1974). Finally, both states also have similar, but not identical, statutes on the enforceability of indemnification provisions in construction contracts. *See* Ky. Rev. Stat. § 371.180; Tenn. Code Ann. § 62-6-123.

Atlas, moreover, does not mount a vigorous defense to this conclusion, noting instead that the same result is reached whether Kentucky or Tennessee law applies. R. 842-1 at 10 n.2. As for Arkansas law, Unarco only argues for its application in the event Tennessee law does not govern. R. 843-1 at 11. As a result, Tennessee law applies to the resolution of this contractual question.

*Indemnity Agreements*. So do the indemnity provisions actually require Atlas to indemnify Unarco for its own negligence? Tennessee law allows a party to be indemnified against its own negligence—so long as the indemnifying agreement states so "clearly and unequivocally." *Summers Hardware & Supply Co. v. Steele*, 794 S.W.2d 358, 363 (Tenn. Ct. App. 1990). While the contract need not employ "magic words," the intent must be clear from the language. *Kroger Co. v. Giem*, 387 S.W.2d 620, 626 (Tenn. 1964) (citing *Buckeye Cotton Oil Co. v. Louisville & Nashville R.R. Co.*, 24 F.2d 347, 348 (6th Cir. 1928)). Only one agreement between Unarco and Atlas expresses such an intent: the Purchase Order Terms and Conditions. That agreement requires that Atlas, to the full extent allowed by law, indemnify Unarco for all settlements paid or incurred by Unarco, including those for bodily injury or death "arising in whole or in part out of" any negligent or wrongful act or omission by Atlas, "*except only as to such injury or damage as shall have been*

*caused by the sole negligence of Unarco*." R. 842-4 at 3 (emphasis added). This provision means Atlas will indemnify Unarco, assuming that the injury arises in whole or in part from Atlas's own negligence, so long as Unarco is not *solely* negligent.

But wait, says Atlas—the *Asher* plaintiffs' failure to assert vicarious liability claims against Unarco meant that Unarco was only being held liable for its *sole negligence*. R. 842-1 at 7. And this Court previously held that Unarco's liability to the *Asher* plaintiffs arose out of its obligations to be "totally responsible for safety," obligations it had not completely delegated to Atlas. *Id*. According to Atlas, these considerations preclude indemnity under the Purchase Order. This understanding is a misreading of the provision.

To begin, the words of the Purchase Order must be construed as a whole and not read in isolation. *Pitt v. Tyree Org. Ltd*., 90 S.W.3d 244, 253 (Tenn. Ct. App. 2002). The agreement first contemplates that the negligence may arise "in whole or in part" from Atlas in order for Atlas to be responsible for indemnifying Unarco. Here, no one disputes that both Unarco and Atlas were negligent. The final clause— "except only as to such injury or damage as shall have been caused by the sole negligence of Unarco"—indicates that, so long as Unarco is not *solely* responsible for the injury or damage, Atlas will indemnify it. And the combined negligence in this case produced one "injury or damage"—the carbon monoxide poisoning of the *Asher* plaintiffs.

If the Purchase Order omitted the word "solely," the provision would read as Atlas claims. Nevertheless, the word is only given meaning if Atlas is required to

indemnify Unarco assuming Unarco is not 100 percent responsible for the injury or damage. In *Kellogg Co. v. Sanitors, Inc.*, the Tennessee Supreme Court faced a similar dilemma in giving meaning to the contract terms chosen by the parties. 496 S.W.2d 472, 473-74 (Tenn. 1973). It considered a two-part indemnity provision where the first part required the subcontractor Sanitors to indemnify the general contractor Kellogg for Sanitors's own negligence. The second part required Sanitors to be responsible for the safety of its employees actually performing the work and to indemnify Kellogg for "any and all claims" made by Sanitors' employees. *Id*. at 473. The court concluded that, for the second part to have any meaning, "it would have to apply to claims against Kellogg by employees of Sanitors, whether the claim resulted from the negligence of Kellogg or not." *Id*. at 474. Thus, the second part had the effect of indemnifying Kellogg for its own negligence.

Like *Kellogg*, for the final phrase to have any meaning, it must mean that Atlas will indemnify Unarco so long as Unarco is not alone at fault. A situation where Unarco was solely at fault is conceivable. For example, assume that instead of simply subcontracting the work to Atlas and assuming Atlas would handle safety matters, a Unarco representative had actually been present at the distribution center. Next, assume the Unarco representative personally turned on the generators inside the freezer against the protestations of an Atlas representative. In such case, it would be impossible to claim that anyone but Unarco was responsible for the resulting injuries. As a result, Atlas would have no duty to indemnify Unarco. Yet that is not what occurred. Instead, Unarco's liability arises from its failure to supervise the work at the distribution center; its negligence did not, standing alone, cause the *Asher* injuries.

The parties debate whether Unarco's negligence was active or passive. Tennessee courts have looked at whether a party's negligence was active or passive where a party seeks indemnification for its own negligence. *See, e.g., Fuqua v. Aluminum Co. of America*, 631 S.W.2d 140, 141 (Tenn. Ct. App. 1982); *Summers Hardware & Supply Co. v. Steele*, 794 S.W.2d 358, 362 (Tenn. Ct. App. 1990). But those cases involved general indemnity provisions lacking the clear language used in the Purchase Order. And even without that language, Unarco's liability could better be described as passive, not active, negligence. In *Fuqua v. Aluminum Co. of America*, the owner ALCOA sought indemnification from the contractor Invirex after Invirex's employee died during work on a high-voltage power line. ALCOA failed to cut the power to the line, but Invirex also failed to notify ALCOA that its worker would be on the line. Invirex claimed ALCOA had a nondelegable duty of safety and the indemnification provision did not cover ALCOA for its own negligence. That provision required Invirex to indemnify ALOCOA for "all liability, claims and damages" arising from or connected with the performance of the contract. *Id*. The court disagreed. It held that ALCOA was not guilty of "active negligence" and that the contract showed an intent to indemnify ALCOA for damages arising as a result of Invirex's negligence. *Id*. at 142. On the other hand, the Tennessee Supreme Court found that Kroger had been actively negligent in *Kroger Co. v. Giem*, 387 S.W.2d 620, 626 (Tenn. 1964). A Kroger employee had taken an active part in running the job and, therefore, Kroger's negligence did not qualify as merely passive. *Id*. at 624. Here, while not exactly on point, Unarco's negligence more closely resembles ALCOA's negligence, not Kroger's. Unarco's liability arises from its failure to

supervise the work at the distribution center. Unlike the situation in *Kroger*, Unarco had no employees on the ground directing operations. True, Unarco had an opportunity to act to ensure safety at the distribution center (and ALCOA did not). But in neither case was an employee on the scene managing the work as in *Kroger*.

Even if Unarco's liability could rightly be called active, the indemnity provision in the Purchase Order included "clear and unequivocal terms" requiring Atlas to indemnify Unarco except for its sole negligence. *Id.* at 626. Thus, the provision differed from the general indemnity provisions in *Fuqua* and *Kroger*. The active/passive distinction, therefore, does not hold the same significance in this matter. As a result, Atlas is bound by the terms of the agreement and must indemnify Unarco.

Unarco also highlights two other agreements it claims entitle it to indemnification from Atlas: the Supplementary Terms and Conditions in its Subcontract with Atlas and the Wal-Mart/Unarco Contract. Because the Purchase Order contains language supporting Unarco's entitlement to indemnification for its own negligence, the Court need not reach Unarco's other arguments.

***Tennessee Law Does Not Void the Agreement.*** Should Unarco demonstrate that the agreements in place required Atlas to indemnify it for its own negligence, Atlas claims, Tennessee law prohibits such agreements in construction contracts. R. 842-1 at 10. Tennessee law voids construction contracts purporting to indemnify a party for that party's sole negligence. Tenn. Code. Ann. § 62-6-123. Specifically, the Tennessee statute applies to "a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance"

that purports "to indemnify or hold harmless the promisee against liability for damages arising out of" injury to persons or property "caused by or resulting from the sole negligence of the promisee." *Id*. Under this statute, such agreements are void as against public policy and unenforceable. *Id*. Here, the Purchase Order does not purport to indemnify Unarco for its sole negligence; in fact, it expressly precludes doing so. Thus, the agreement does not run afoul of the Tennessee anti-indemnity statute.

Tennessee cases interpreting this statute square with this conclusion. The indemnification agreement in *Elliott Crane Serv. v. H.G. Hill Stores, Inc.*, 840 S.W.2d 376 (Tenn. Ct. App. 1992), involved language similar to that used here but with one important distinction. Like the Unarco/Atlas agreement, the *Elliott Crane* agreement stated that the "Lessee shall not be required to indemnify Lessor for its sole negligence." *Id*. at 378. The provision did not end there; it also stated that "Lessor's liability for damage caused by the sole negligence of Lessor, its agents and employees, hereunder shall be limited to the amount of Lessor's liability insurance." *Id*. According to the court, this last clause "emasculated" the first clause and therefore violated Tennessee law. *Id*. at 380. In a passing sentence, the court noted that the Lessor was not protected by any liability insurance. Drawing on this last point, the court in *Armoneit v. Elliott Crane Service, Inc.*, 65 S.W.3d 623, 631 (Tenn. Ct. App. 2001), considered the exact same indemnification provision in another case involving the Lessor, Elliott Crane, and once again struck it down. That Elliott Crane had acquired liability insurance was irrelevant. Because the last clause still limited Elliott Crane's liability for its sole negligence to the amount of its insurance policy,

the policy failed to pass muster. The court made no mention of problems with the first clause standing alone. In this case, the agreement between Unarco and Atlas contains no such limiting language.

Other cases examining the scope of the Tennessee statute do not alter this conclusion. The Sixth Circuit considered the meaning of "sole negligence" in the context of Tenn. Code § 62-6-123 in *Cincinnati, New Orleans and Texas Pacific Raliway Co. v. C & P Management, Inc*., No. 94-5692, 1995 WL 513564, at *3 (6th Cir. Aug. 29, 1995). In the court's view, "indemnification contracts are voided by the public policy expressed in Tenn. Code Ann. § 62-6-123 *only* when such agreements call for indemnification for injury or damage 'caused by or resulting from the *sole negligence of the promisee.*'" *Id*. In that case, there had been no contention that the railroad alone was negligent. And because the railroad's sole negligence could not be established, the Tennessee statute did not apply.

Atlas's arguments to the contrary are unavailing. A superficial reading of *Posey v. Union Carbide Corp*., 507 F. Supp. 39 (M.D. Tenn. 1980), would initially seem to support Atlas's position. There, the agreement at issue included a broad, sweeping provision requiring the plaintiff's employer, Maury Steel, to indemnify Union Carbide for *all* claims resulting or in any way connected with Union Carbide's negligence. *Id*. at 40. The court used equally broad language in striking the provision. It stated: "The purpose of the contract was to save Union Carbide from any liability for its own negligence." *Id*. at 41. It declared such contracts null and void under the statute and noted that construction business owners could no longer "contract away liability for their own negligence." *Id*.

Standing alone, *Posey* suggests that any time a construction owner seeks indemnification for its own negligence, that provision is void and unenforceable.  But subsequent cases have shown this reading to be overly expansive.  *Rentenbach Constructors, Inc. v. Bowen*, No. E2000-1213-COA-R3-CV, 2000 WL 1690286, at *2 (Tenn. Ct. App. Nov. 13, 2000), examined the phrase "sole gross negligence" in an indemnification agreement.  The provision indemnified the promisee for losses "[e]xcept only such injury or damage as shall have been occasioned by sole gross negligence of the [promisee]."  The use of "sole gross negligence" led the court to conclude that "sole *simple* negligence" was not excepted by the provision.  *Id*. at *3.  The provision, therefore, expressed the intent to indemnify the promisee for its sole *simple* negligence, rendering it void and unenforceable.

Because the agreement between Unarco and Atlas required Atlas to indemnify except for its sole negligence and because the provision does not violate the Tennessee anti-indemnity statute, Atlas must indemnify Unarco.

***Common Law Indemnity*.**  Unarco next contends it is entitled to common law indemnity from Atlas.  Because the Court concludes Unarco is entitled to contractual indemnity, it need not reach this claim.[1]

---

[1]  Were the Court to consider Unarco's common law indemnity claim, it would likely succeed. Common law indemnity claims arise when one of two parties does an act or creates a hazard, causing the other to face liability even though he did not concurrently join in the act. *Brown Hotel Co. v. Pittsburgh Fuel Co*., 224 S.W.2d 165, 166-67 (Ky. 1949). In such cases, "the active wrongdoer" or the "primarily negligent" party can be compelled to make the other party whole for losses sustained. *Id*. Unarco's negligence could accurately be characterized as passive, entitling it to indemnity.  Further, Atlas's argument that there has been no finding of legal liability does not doom Unarco's claim.  For legal liability to exist, no defenses or impediments could have blocked recovery. *Long v. Ill. Cent. Gulf R.R. Co*., 660 F. Supp. 469, 473 (W.D. Ky. 1986).  It is unclear what, if any, defenses would block Unarco's recovery.

## CONCLUSION

Unarco has made its case that it is entitled to indemnification based on the language of the Purchase Order with Atlas. Tennessee law does not stand as an impediment to this conclusion. As a result, Unarco is entitled to indemnification from Atlas.

Accordingly, it is **ORDERED** that:

(1) Unarco's motion for summary judgment, R. 843, is **GRANTED**.

(2) Atlas's motion for summary judgment, R. 842, is **DENIED**.

This the 26th day of July, 2011.

Signed By:

_Amul R. Thapar_ AT

United States District Judge