UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| WILLIAM H. ASHER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNARCO MATERIAL HANDLING, INC., et al., <br><br> Defendants. <br><br> v. <br><br> LEXINGTON INSURANCE CO., <br><br> Intervening Defendant. | Civil No. 06-548-ART <br><br><br><br><br><br><br><br> **MEMORANDUM OPINION & ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Numerous plaintiffs sued Unarco Material Handling claiming that Unarco's negligence led to the plaintiffs' carbon monoxide exposure. After several years of litigation, Unarco settled. Unarco's insurer footed the bill for all of Unarco's settlement and defense costs.

Unarco subsequently sued its subcontractor Atlas and Atlas's insurer, Lexington Insurance Company, for breach of contract, among other things. Unarco now wants Atlas and Lexington to pay Unarco for its litigation and settlement costs—costs for which Unarco has already been reimbursed by its own insurer. The law, however, does not support Unarco's attempt to obtain a second recovery.

# BACKGROUND

The facts of this case are well-established. *See Asher v. Unarco Material Handling, Inc.*, London No. 06-548-ART, 2010 WL 3119281 (E.D. Ky. July 28, 2010). Briefly, in October 2005, Wal-Mart hired Unarco to repair, replace, and install storage racks at its Distribution Center in London, Kentucky. R. 820-1 at 2. Unarco, in turn, subcontracted the work to Atlas for rack repair services. *Id.* Atlas further subcontracted the installation work to Rack Conveyor Installations, Inc. ("RCI"). *Id.*

Between November and December of 2005, a number of Wal-Mart employees working at the Distribution Center suffered carbon monoxide-related injuries as a result of the ongoing rack installation and repair work. R. 1-2 at 9, 10. These employees—the *Asher* plaintiffs—sued Unarco and Atlas in November 2006 and settled with them in late 2008. R. 1-1. During the Asher litigation, Unarco filed cross-claims against Atlas and RCI for contractual and common-law indemnity, and RCI later settled the claims against it. *See* R. 67. Unarco also demanded that Atlas's insurance company, Lexington, defend and indemnify Unarco for the claims asserted against it. When Lexington did not do so, Unarco filed an intervening complaint against Lexington for breach of contract, bad-faith refusal to pay a claim, and violation of the Kentucky Unfair Claims Settlement Practices Act. *See* R. 737 at 4. The parties agreed to postpone consideration of the bad faith and unfair settlement claims against Lexington. *See* R. 835 at 2.

# DISCUSSION

Unarco's pending claims against Atlas and Lexington are for breach of contract. To prove breach of contract under Kentucky law, Unarco must prove that (1) a valid contract exists; (2) Atlas and Lexington breached their respective contracts; and (3) Unarco has

sustained damages due to the breach. *See Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 14 (Ky. Ct. App. 2009). The Court has already determined that Unarco qualified as an additional insured under Atlas's policy with Lexington, *see generally* R. 835, and that Unarco was entitled to be defended and indemnified in the *Asher* litigation in accordance with this policy, *see generally id.*, R. 863. There is no dispute that Lexington breached its duties to defend and indemnify Unarco in the *Asher* litigation. Likewise, the Court previously held that Atlas had a contractual duty to indemnify Unarco. R. 863 at 1. But because Unarco has not incurred any damages, it is not entitled to recover on these breach of contract claims.

I.  **Whether Unarco Has Proven Damages Against Lexington**

In its breach of contract claim against Lexington, Unarco seeks to recover (1) the costs of defending the *Asher* litigation and of settling with the *Asher* plaintiffs, (2) the costs of bringing this coverage action against Lexington, and (3) pre-judgment interest. While Travelers has incurred these costs as Unarco's insurer, Unarco has neither incurred nor expended a single cent. Therefore, the Court must grant summary judgment in favor of Lexington.

   A.  **Defense and Settlement Costs of the *Asher* Litigation**

There is no dispute that Travelers provided Unarco with legal representation for the underlying *Asher* litigation and likewise paid for the entire amount of Unarco's settlement with the *Asher* plaintiffs. *See* Unarco's Resps. to Requests for Admission, R. 871-6 (Nos. 2 & 3); Penrod Dep., R. 871-8 at 6–7; Mots. Hr'g Tr. at 4 (Mr. Page: "I don't believe that there are any hard dollar damages that have not been paid by Travelers."). Instead, Unarco argues that Travelers' payment is irrelevant because of the collateral source rule.

Under the collateral source rule, a tortfeasor cannot claim credit for payments that the plaintiff receives from others, such as insurance companies. *Schwartz v. Hasty*, 175 S.W.3d 621, 626 (Ky. Ct. App. 2005). Why? In a choice between allowing the plaintiff a double recovery from the tortfeasor and his insurer and allowing the defendant to escape liability, the windfall should "accrue to the less culpable injured party." *Id.*. Otherwise, permitting the tortfeasor to reduce his liability by the plaintiff's collateral benefits would result in under-deterrence. *Id.* For example, suppose that Jennifer negligently burns Chad with "Beyond Insanity" hot sauce during lunch. As a result, Chad has $10,000 in medical expenses, which his trusty insurer repays. Eager to hold Jennifer liable, however, Chad sues her for negligence, seeking to recover the $10,000 in medical expenses. If Jennifer may credit Chad's $10,000 worth of insurance coverage against her own $10,000 liability, then that lowers the cost of Chad's injuries to Jennifer and thus results in sub-optimal deterrence. This result would also shift the burden of the cost to first-party insurers, likely resulting in either reduced coverage or increased premiums for victims. *See* Richard A. Posner, Economic Analysis of Law 199 (7th ed. 2007). In a choice between Chad's double recovery of $20,000 and Jennifer's liability of $0, the collateral source rule opts for the former because of tort law's emphasis on deterring others and punishing the tortfeasor.

Unarco says that the collateral source rule prevents the Court from crediting Travelers' payments against Unarco's costs. The linchpin holding Unarco's argument together is the assertion that the collateral source rule applies to breach of contract claims. But it does not.

Unarco has not identified a single case where Kentucky courts have held that this rule applies in a breach of contract action even though the collateral source rule has existed in

4

Kentucky for over a century, *see Louisville & N.R. Co. v. Carothers*, 65 S.W. 833, 834 (Ky. 1901). In fact, Unarco cites only one Kentucky case involving the collateral source rule in a breach of contract case. *See* R. 881 at 3. That case, *USACO Coal Co. v. Liberty Nat'l Bank & Trust Co.*, 700 S.W.2d 69, 72 (Ky. Ct. App. 1985), does not support applying the rule to breach of contract claims. In *USACO*, the defendant compensated the plaintiff and wanted to credit that payment against his tort liability to the plaintiff. *Id.* The court allowed him to do so. *Id.* It reasoned that the collateral source rule was inapplicable because, unlike payments made by a third-party insurer, payments by a defendant are not "collateral" to the dispute between the plaintiff and the defendant. Importantly, the court did not decide whether the collateral source rule would apply to a breach of contract claim. *Id.* (holding that "the collateral source rule has no application" because the source of the plaintiff's compensation was "not truly a collateral source"). Of the other jurisdictions to consider this question, the overwhelming majority have explicitly refused to import the collateral source rule into the law of contracts.[1]

This national consensus exists for good reason: the policies underlying the rule "are less compelling" in breach of contract cases than in tort actions. Restatement (Second) of Contracts § 347 cmt. e (1979). Tort law's focus on punishment and deterrence favors the risk of a plaintiff's double recovery over the risk of under-deterring the defendant. Unlike in tort law, the purpose of damages in contract law is not deterrence and punishment. *See*

---

[1] *See, e.g.*, *Pan Pacific Retail Props. v. Gulf Ins.*, 471 F.3d 961, 973–74 (9th Cir. 2006) (applying California law); *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 872–74 (9th Cir. 1986) (applying Idaho law); *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 191 F.3d 675, 693 (6th Cir. 1999) (applying Tennessee law); *Garofalo v. Empire Blue Cross & Blue Shield*, 67 F. Supp. 2d 343, 347 (S.D.N.Y. 1999) (applying New York law); *Centon Elecs., Inc. v. Bonar*, 614 So. 2d 999, 1004 (Ala. 1993); *Grover v. Ratliff*, 586 P.2d 213, 215 (Ariz. Ct. App. 1978); *City of Miami Beach v. Carner*, 579 So.2d 248, 253–54 (Fla. Dist. Ct. App. 1991); *Amalgamated Transit Union Local 1324 v. Roberts*, 434 S.E.2d 450, 452 (Ga. 1993); *Midland Mut. Ins. Co. v. Mercy Clinics, Inc.* 579 N.W.2d 823, 830 (Iowa 1998); *Corl v. Huron Castings, Inc.*, 544 N.W.2d 278, 286 (Mich. 1996); *Hurd v. Nelson*, 714 P.2d 767, 771 (Wyo. 1986).

Ronald W. Eades, Kentucky Law of Damages § 18:1 (2012) ("To compensate a party injured by a breach of contract, the court will seek to award sufficient funds to put the party in the position he or she would have enjoyed of the contract had not been breached."); Ky. Rev. Stat. § 411.184(4) ("In no case shall punitive damages be awarded for breach of contract."); *cf. Med. Protective Co. v. Wiles*, No. 2010-CA-000262-MR, 2011 WL 2420011, at *7 (Ky. Ct. App. June 17, 2011) (permitting punitive damages to be awarded for breach of an insurance contract only when there is "proof of bad faith," which constitutes a separate tort claim (quoting *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993))). Instead, contractual damages are almost purely compensatory, measured by the amount that the non-breaching party would have received if the contract had been performed as promised. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007); *see also* 22 Am. Jur. 2d Damages § 45 (limiting a party's recovery in a breach of contract action to "the loss that he has actually suffered by reason of the breach"). Applying the collateral source rule to contract law would "contravene this principle by awarding the non-breaching party more damages than necessary to compensate it for the breach." *Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 830 (Iowa 1998).

Indeed, the collateral source rule is a limited exception to Kentucky's otherwise "strong public policy" against "double recovery for the same element of loss." *Rawlings v. Breit*, Nos. 2003-CA-002785, 2004-CA-000017-MR, 2004-CA-00030-MR, 2005 WL 1415356, at *8 (Ky. Ct. App. June 17, 2005) (quoting *Hardaway Mgmt. Co. v. Southerland*, 977 S.W.2d 910, 918 (Ky. 1998)). Without a strong justification in favor of applying the collateral source rule to breach of contract actions, this Court cannot override Kentucky's strong public policy against double recovery.

In fact, releasing the collateral source rule into the contractual arena would result in a Pyrrhic victory for Unarco. Suppose that the Court extended the collateral source rule to the contractual arena and then held that Unarco could recover the coverage and defense costs through its breach of contract claim. Because this is a contractual claim without any proof of bad faith, however, Unarco could not obtain punitive damages. Yet if Unarco dropped its breach of contract claim and pursued these same damages through its bad-faith claim, punitive damages would be available. *Med. Protective Co.*, 2011 WL 2420011, at *7 (quoting *Wittmer*, 864 S.W.2d at 890). This fact makes Unarco's fervent attempt to shoehorn its losses into the contractual arena puzzling. After all, even if Unarco could recover compensatory damages on its breach of contract claim, it is likely that Unarco could not use those compensatory damages as a basis for obtaining punitive damages on a sufficiently different claim, such as bad faith. *Accord State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."); *see also* Ky. Rev. Stat. § 411.184(4) ("In no case shall punitive damages be awarded for breach of contract.")

Undeterred, Unarco trumpets its own "parade of horribles" that would result from limiting the collateral source rule to the tort context. Refusing to apply the collateral source rule in contract law, Unarco asserts, "would effectively destroy the right of contractual subrogation." Unarco's Reply Br., R. 881 at 10. This argument is myopic. Without a doubt, Travelers cannot recover through subrogation on Unarco's breach of contract claim. But Travelers still has two better-fitting mechanisms to recover its losses: subrogation to Unarco's bad-faith claim and Traveler's direct claim against Lexington for equitable contribution. Travelers retains its ability to recover through subrogation because Unarco

7

may be able to recover these same losses in the tort arena—where the collateral source rule *does* apply—through a bad-faith claim. *See Nat'l Sur. Corp. v. Hartford Ins. Co.*, 493 F.3d 752, 756 (6th Cir. 2007) (applying collateral source rule in bad faith claim under Kentucky law for subrogation claim by excess insurer against primary insurer).

Travelers also has a second better-fitting mechanism by which it can recover directly from Lexington: an equitable contribution claim. *See* 16 Couch on Insurance § 222:98 (2011) (describing cause of action between insurers for equitable contribution); 44A Am. Jur. 2d Insurance § 1765 (same); *see, e.g.*, *Int'l. Multifoods Corp. v. Comm. Union Ins. Co.*, 309 F.3d 76 (2d Cir. 2002) (applying New York law); *Emp'rs Ins. of Wausau v. James McHugh Constr. Co.*, 144 F.3d 1097 (7th Cir. 1998) (applying Illinois law); *State Farm Fire & Cas. Co. v. Zurich Ins. Co.*, 111 F.3d 42 (6th Cir. 1997) (applying Kentucky law); *N. Ins. Co. of New York v. Allied Mut. Ins. Co.*, 955 F.2d 1353 (9th Cir. 1992). When one insurer seeks contribution from another insurer, an equitable contribution claim makes more sense than shoehorning the claim into the insured's breach of contract claim. In an equitable contribution claim, Lexington can assert defenses that it has against Travelers—such as how to resolve the policies' other insurance clauses.

Because an equitable contribution claim allows one insurer to assert defenses directly against another insurer, moreover, the measure of damages in an equitable contribution claim will be more efficient than in a subrogated breach of contract claim. Why? Suppose that the policies' other insurance clauses would make each insurer, Lexington and Travelers, responsible for a portion of the coverage. If Unarco recovers on a breach of contract claim, it will be entitled to recover all consequential damages of Lexington's breach. These consequential damages would be equal to the entirety of the value of this cross-claim,

8

thereby leaving Unarco (or Travelers if it activates its subrogation rights) with a windfall. If, instead, Travelers directly sued Lexington for equitable contribution, then Travelers would only be entitled to Lexington's share of the coverage under the policies' other insurance clauses—the portion for which Lexington was responsible. The latter posture better coheres with the compensatory and non-punitive nature of contractual damages. Refusing to extend the collateral source rule to breach of contract claims does not therefore eliminate Travelers' right of recovery.

Unarco also claims that failure to apply the collateral source rule would permit Lexington to "gain from its denial to defend its insured" in violation of Kentucky case law. R. 874-1 at 23 (quoting *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 842 (Ky. 2005)). Contrary to Unarco's concern, refusing to apply the collateral source rule in the contractual arena does not permit Lexington to escape scot-free. As already explained, Lexington may be liable to Unarco (and subrogee Travelers) for a bad-faith tort claim. Further, Lexington may be directly liable to Travelers for equitable contribution. The only effect of keeping the collateral source rule in its tort cage is to prevent Lexington from being liable to Unarco for breach of contract.

Wait, says Unarco: Unarco can stand in Travelers' shoes to sue Lexington for the amount of Travelers' losses. There are two problems with this assertion. First, Unarco has steadfastly asserted the contrary position—that it, and not Travelers, is the real party in interest. R. 874-1 at 28 ("Unarco remains a real party in interest, *and indeed the only real party in interest*, with respect to these claims."). But if Unarco is the real party in interest, then Unarco cannot prove contractual damages. As discussed above, the collateral source rule does not apply to this breach of contract claim.

9

Alternatively, and despite its contention otherwise, Unarco may be trying to sue Lexington on behalf of Travelers to recover Travelers' losses in defending and settling the *Asher* litigation. This posture would purport to make Travelers the real party in interest. But Travelers was neither a party to nor an additional insured under the Lexington insurance policy and therefore has no breach of contract claim against Lexington. Further, to the extent that Unarco argues that Travelers assigned its right of recovery against Lexington to Unarco, Unarco's cross-claim complaint does not mention this fact or assert any cause of action based on assignment. Such a claim is simply too late, and Unarco is thus unable to sue for breach of contract on Travelers' behalf.

In conclusion, Traveler's compensation of Unarco's defense and settlement costs in the *Asher* litigation must therefore be credited against the damages Unarco seeks. This leaves Unarco with zero damages for the defense and settlement costs of the *Asher* litigation.

### B. Attorney's Fees and Costs of this Coverage Litigation

Unarco is also not entitled to recover its costs and attorney's fees in pursuing this coverage action against Lexington. As Sonny Bono put it, the beat goes on: because the collateral source rule does not apply to breach of contract claims and Travelers has paid for all of Unarco's costs of bringing this cross-claim, Unarco does not have any damages.

Even if the collateral source rule did apply in the contractual arena, Unarco would still not be entitled to recover the costs of bringing this coverage action. Under Kentucky law, if an insurer breaches the duty to defend its insured, then the insurer is liable for "all damages naturally flowing from" its failure to provide a defense. *E.g.*, *Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 523 (Ky. 1987). This principle operates no differently than consequential damages in any breach of contract claim. Unarco argues that the consequential

10

damages of Lexington's breach of contract include the cost of bringing this lawsuit to establish coverage.

Unarco is wrong. Its argument, if successful, would eliminate the American Rule—in which each side pays its own litigation costs and attorney's fees—in all breach of contract cases under Kentucky law. Kentucky, however, is one of "seven states" that "follow the American rule strictly" and "have not yet adopted any common-law exceptions allowing for the payment of attorney's fees to policyholders that are successful in coverage actions against their insurance companies." *ACMAT Corp. v. Greater N.Y. Mut. Ins. Co.*, 923 A.2d 697, 703 (Conn. 2007) (citing *Aetna Cas. & Sur. Co.*, 179 S.W.3d at 842). Unsurprisingly, Unarco does not cite a single case in which Kentucky courts have allowed an insured to recover the costs and attorney's fees of a coverage action against his insurer.

Instead, Unarco insists that Kentucky courts retain equitable discretion to award attorney's fees despite the American Rule and urges the Court to exercise its discretion here. R. 881 at 12 (citing *Ky. State Bank v. AG Servs., Inc.*, 663 S.W.2d 754, 755 (Ky. Ct. App. 1984) ("However, [the American rule] does not, we believe abolish the equitable rule that an award of counsel fees is within the discretion of the court depending on the circumstances of each particular case.")). Although there are a "few cases" that reiterate this rule, "exactly what circumstances would justify this exception to the [American] rule have never been spelled out." *Cummings v. Covey*, 229 S.W.3d 59, 62 (Ky. Ct. App. 2007). Moreover, the Kentucky Supreme Court's most recent decision on the subject states the general rule to be much broader: "with the exception of a specific contractual provision allowing for the recovery of attorneys' fees or a fee-shifting statute, . . . each party assumes responsibility for his or her own attorneys' fees." *Aetna Cas. & Sur. Co.*, 179 S.W.3d at 842. The *Aetna* court

11

does not mention equitable discretion to award attorney's fees.

Even if Kentucky courts retain equitable discretion to award attorney's fees after *Aetna Casualty & Surety Co.*, this case does not call for the exercise of that discretion. The Court has granted summary judgment in favor of Lexington with respect to the costs of defending and settling the underlying *Asher* litigation. Lexington is thus the prevailing party, compelling the conclusion that its defense of this breach of contract claim was not frivolous. *Cf. Lake Village Water Ass'n, Inc. v. Sorrell*, 815 S.W.2d 418, 420–21 (Ky. Ct. App. 1991) (equitably awarding attorney's fees because party's appeal was obviously frivolous). Accordingly, Unarco cannot recover its attorney's fees and costs of this coverage action as consequential damages for breach of contract.

### C. Pre-Judgment and Post-Judgment Interest

Unarco also claims that it is entitled to pre- and post-judgment interest on all of its breach of contract damages. R. 874 at 37–38. Because Unarco cannot recover any damages for its breach of contract claim against Lexington, however, Unarco is not entitled to any pre- or post-judgment interest. Consequently, Unarco has not proven any damages for its breach of contract claim against Lexington.

### II. Whether Unarco Has Proven Damages Against Atlas

Unarco also seeks contractual indemnification from its subcontractor Atlas for four sets of damages: (1) Unarco's settlement and defense of the *Asher* litigation, (2) the costs of bringing this indemnity action against Atlas, (3) the costs of suing Lexington for coverage and RCI for indemnity, and (4) pre- and post-judgment interest. For the same reasons offered with respect to Unarco's claim against Lexington, the collateral source rule is inapplicable in the contractual setting. Therefore, Unarco has not proven any damages with

12

respect to its claim against Atlas, and the Court must grant summary judgment in favor of Atlas.

### A. The Defense and Settlement Costs of the *Asher* Litigation

Unarco has no damages to recover in its breach of contract claim against Atlas. Travelers, not Unarco, paid for the defense and settlement costs of the *Asher* litigation, and this amount must be credited against Unarco's asserted losses. *See Safeco Ins. Co. of Am. v. City of White House, Tennessee*, 191 F.3d 675, 693 (6th Cir. 1999) ("Tennessee does not apply the collateral source rule to contract actions." (citing *Drewry v. Continental Cas. Co.*, No. 03A01-9111-CH-417, 1992 WL 60876, at *5–6 (Tenn. Ct. App. Mar. 30, 1992))).[2] Therefore, Unarco has no damages to recover on its breach of contract claim.

In response, Unarco argues its Purchase Order Agreement with Atlas requires Atlas to indemnify and defend Unarco and its insurers, and Unarco may therefore sue Atlas on behalf of Travelers. The first point is correct, but the second is not. Under the plain text of the Purchase Order Agreement, Atlas "indemnifies, defends, and holds harmless Unarco, and its parent and any other affiliated entities, and their respective . . . insurers." R. 843-5 ¶ 13. So Travelers may be able to sue Atlas as a third-party beneficiary to the Purchase Order because Atlas agreed to indemnify Travelers as Unarco's insurer. But Atlas's promise to directly indemnify Travelers is a far cry from granting Unarco a right to be indemnified *on behalf of* Travelers. To accomplish that, the indemnification provision would have to say that Atlas "indemnifies, defends, and holds harmless Unarco *for the losses of* Unarco and its parent and any other affiliated entities, and their respective . . . insurers." And any doubt as to whether

---

[2] The Court has already determined that Tennessee law applies to the Purchase Order Agreement. *See* Mem. Op. & Order, R. 863 at 3–5.

13

the actual language of the indemnification provision can be interpreted to grant Unarco a right to sue on behalf of Travelers must be construed against Unarco, the contract's drafter. *See, e.g.*, *Diversified Energy, Inc. v. Tenn. Valley Auth.*, 223 F.3d 328, 329 (6th Cir. 2000) (applying Tennessee law). Therefore, Unarco can neither prove that it incurred any of the *Asher* defense and settlement costs nor show that it is entitled to sue on behalf of Travelers under the Purchase Order Agreement.

### B. Attorney's Fees and Costs of Coverage Suit Against Lexington and Indemnity Suit Against RCI

Unarco is not done yet. Based on the supposedly broad language of the indemnification provision in the Purchase Order Agreement, Unarco also wants Atlas to reimburse it for the costs of its coverage suit against Lexington and the costs of its indemnity suit against Atlas and RCI. The Court does not need to interpret this provision. Even assuming that the indemnification provision is as broad as Unarco claims, Unarco has not incurred any damages to sustain its breach of contract claim. Like the rest of the damages Unarco seeks, Travelers has borne the entire cost of Unarco's coverage and indemnity suits. Unarco therefore has no damages to recover because the collateral source rule does not apply to this breach of contract claim.

### C. Pre-Judgment and Post-Judgment Interest

Lastly, Unarco seeks pre- and post-judgment on any amounts recovered from Atlas. Because Unarco has not proven any damages on its claim against Atlas, Unarco is not entitled to any interest.

### III. Motion for Election of Remedies

Atlas has also moved to have Unarco make an election of remedies between Atlas and

14

Lexington. To prevent double recovery for the same injury, this doctrine requires the prevailing party to choose between remedies if the remedies awarded are "duplicative" or "inconsistent." *Hickson Corp. v. Norfolk So. Ry. Co.*, 260 F.3d 559, 568 (6th Cir. 2001). In short, election of remedies is the "legal version of the idea that a plaintiff may not have his cake and eat it too." *Id.* at 566–67. Because Unarco is not entitled to any contractual damages against Lexington or Atlas, Unarco has no "election" to make. Therefore, Atlas's motion for an election of remedies must be denied as moot.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Lexington's motion for summary judgment on Unarco's breach of contract claim, R. 871, is **GRANTED**, and Unarco's motion for summary judgment on its breach of contract claim against Lexington, R. 874, is **DENIED**.

(2) Unarco's motion for summary judgment on its breach of contract claim against Atlas, R. 870, is **DENIED**. At the telephone conference scheduled below, the parties should be prepared to discuss whether it is appropriate to terminate Atlas from this case.

(3) Atlas's motion for an election of remedies, R. 872, is **DENIED AS MOOT**.

(4) A telephone conference is **SCHEDULED** for **Thursday, May 17, 2012**, at **2:30 p.m.** to discuss the next phase of this litigation. A court reporter is needed and will be provided by the Court. The parties must **DIAL-IN** to this conference call **five minutes before the scheduled time** by following these steps:

    (a) Call AT&T Teleconferencing at 1-877-873-8017;

      (b)     Enter access code 8284218 (following by "#"); and

      (c)     When requested, enter the security code, 1234 (followed by "#").

This the 10th day of May, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge

16